# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL CASE NO. 3:09cv262

| | |
|---|---|
| IN RE WACHOVIA CORPORATION ERISA LITIGATION | ) )<br>)<br>)   **MEMORANDUM OF**<br>)   <u>**DECISION AND ORDER**</u> |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS<br>_____ | )<br>)<br>) |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint with Prejudice [Doc. 116].

## I. PROCEDURAL BACKGROUND

This is a putative class action brought by the Plaintiffs Todd A. Wright, Alan A. Hardman, Richard F. Dziak, David W. Allen, Robert M. Cominsky, Rose Hansen, Denise A. Tuttle, and Jerry R. Kelley, Jr. pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, on behalf of the participants and beneficiaries of two 401(k) Plans ("Plans") sponsored by the Defendant Wachovia Corporation. The Plaintiffs claim that the Defendants breached their fiduciary duties to act solely in the interest of the participants and beneficiaries of the Plans, and to exercise the required skill, care,

prudence, and diligence in administering the Plans and the Plans' assets from May 8, 2006 to December 31, 2008 ("Class Period"). Specifically, the Plaintiffs allege that the Defendants allowed the heavy, imprudent investment of the Plans' assets in Wachovia common stock throughout the Class Period despite the fact that they knew or should have known that such investment was an unduly risky and imprudent investment option for the participants' retirement savings.

The Complaint identifies five general groupings of Defendants whom the Plaintiffs allege were fiduciaries under the Plans. Those five groupings are: (1) the Defendant Wachovia Corporation ("Wachovia" or the "Company"); (2) the Defendant Wells Fargo & Co. ("Wells Fargo"), which merged with Wachovia effective December 31, 2008, and is sued in its capacity as Wachovia's successor-in-interest; (3) the members of Wachovia's Board of Directors (the "Director Defendants")[1]; (4) the members of Wachovia's Management Resources and Compensation

---

[1]The Director Defendants specifically are identified as John D. Baker II; Peter C. Browning; John T. Casteen III; Jerome A. Gitt; William H. Goodwin, Jr.; Maryellen C. Herringer; Robert A. Ingram; Donald M. James; Mackey J. McDonald; Joseph Neubauer; Timothy D. Proctor; Ernest R. Rady; Van L. Richey; Ruth G. Shaw; Lanty L. Smith; Robert K. Steel; G. Kennedy Thompson; and Dona Davis Young. [Complaint, Doc. 104 at ¶ 26].

Committee (the "Compensation Committee Defendants")[2]; and (5) the members of Wachovia's Benefits Committee (the "Benefits Committee Defendants").[3]

This lawsuit originated as eight putative class actions filed in June 2008 against the Defendants in the District Court for the Southern District of New York. These actions were consolidated pursuant to an August 13, 2008 Order issued by the Honorable Naomi Reice Buchwald, United States District Judge. On June 18, 2009, Judge Buchwald transferred the consolidated action to this Court. [See Doc. 1]. Pursuant to this Court's September 3, 2009 Order, the Plaintiffs filed a Consolidated Complaint on September 18, 2009. [Consolidated Complaint ("Complaint"), Doc. 104].

The Defendants now move to dismiss all of the Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Defendants' Motion to Dismiss will be granted.

---

[2]The Compensation Committee Defendants specifically are identified as Defendants Browning, Ingram, McDonald, Proctor, and Shaw. [Complaint, Doc. 104 at ¶ 27].

[3]The Benefits Committee Defendants specifically are identified as Bill Dawson; Larry Gilmer; Rod Hoover; Benjamin J. Jolley; Bill Langley; Jeff Martin; Shannon McFayden; Robert Reid; Sharon Smart; Cece Sutton; Ben Williams; and Thomas J. Wurtz. [Complaint, Doc. 104 at ¶ 28].

## II.     STANDARD OF REVIEW

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so that the defendant may have "fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  A defendant may challenge the legal sufficiency of a complaint by way of a Rule 12(b)(6) motion.  <u>See</u> <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008).  In reviewing such a motion, the Court must assume the facts alleged in the complaint to be true.  <u>Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000).  While all well-pleaded factual allegations must be taken as true, the Court "need not accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  <u>Id.</u>

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations and footnote omitted). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief," supported by well-pleaded facts, that permits the court "to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the Court must identify those allegations that are no more than conclusions and thus are not entitled to the assumption of truth. 129 S. Ct. at 1951 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing Twombly, 550 U.S. at 554-55). Second, the Court must assume the truth of any well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. As the Iqbal Court explained, determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ...

be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).


III.  **FACTUAL BACKGROUND**[4]

A.  **The Parties**

The Plaintiffs Todd A. Wright, Alan A. Hardman, David W. Allen, Robert M. Cominsky, Rose Hansen, Denise A. Tuttle and Jerry R. Kelley, Jr. are participants or beneficiaries of the Wachovia Savings Plan ("Wachovia Plan"), and Plaintiff Richard Dziak is a participant in the A.G.

---

[4] In considering a motion to dismiss, the Court may consider the complaint, documents incorporated or referenced in the complaint, and any other undisputedly authentic documents on which the plaintiffs' claims are based without converting the motion into one for summary judgment. See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); McCarthy v. The Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Additionally, the Court may take judicial notice of any federally regulated filings, including SEC filings, public statements by government authorities, and publicly quoted stock prices. See In re Duke Energy ERISA Litig., 281 F.Supp.2d 786, 790 n.4 (W.D.N.C. 2003).

Edwards Retirement and Profit Sharing Plan ("AGE Plan").[5] [Complaint, Doc. 104 at ¶¶14-21].

Prior to its merger with Wells Fargo on December 31, 2008, the Defendant Wachovia operated as a financial and bank holding company offering a wide range of financial services, including commercial and retail banking, mortgage banking, investment banking, investment advisory, asset-based lending, leasing, insurance and securities brokerage services. [Id. at ¶¶22-24; Wachovia Form 10-K at Overview, Doc. 118-4 at 6].

The Benefits Committee is designated as a fiduciary under both Plans. [Wachovia Plan §11.01 (identifying the "Committee" as fiduciary), §1.22 (defining "Committee" as the Benefits Committee), Docs. 118-8 at 2, 118-6 at 27 and 27; AGE Plan §18.2 (identifying "Plan Administrator" as fiduciary) and Art. 29 of the Fourth Amendment (defining "Plan Administrator" as the Wachovia Benefits Committee), Docs. 119-3 at 25 at 119-4 at 22]. The Benefits Committee is ultimately responsible for the day-to-day administration, maintenance and communications functions of the Plans, including directing the investment of assets and choosing investment options for the Plans. [Wachovia Plan §§11.01, 12.01, 12.02,

_____

[5]Wachovia acquired A.G. Edwards, Inc. on October 1, 2007. [See AGE Plan at Fifth Amendment, Doc. 119-4 at 23].

13.03, Doc. 118-8 at 2, 4, 8-9; AGE Plan §8.3, as amended by Art. 17 of the Fourth Amendment, Docs. 119-3 at 3 and 119-4 at 19].

The Plan documents do not assign any administrative responsibilities to Wachovia, Wells Fargo, the Management Resources and Compensation Committee, or to individual Defendants Langley, Smith, Steel, Thompson, and Wurtz as Plan fiduciaries. Wachovia's Board of Directors is identified as a fiduciary under the Wachovia Savings Plan, but only with respect to appointing members of the Benefits Committee and the Trustee. [See Wachovia Plan §11.01(a), Doc. 118-8 at 2].

## B. The Plans

The Wachovia Savings Plan and the AGE Plan are both "defined contribution pension plans" that were sponsored by Wachovia throughout the Class Period until the end of 2008 and are now sponsored by Wells Fargo. [Wachovia SPD at 30, 32, Doc. 119 at 30, 32; AGE Plan at Eleventh Amendment, Doc. 119-4 at 39; AGE SPD at 47, Doc. 119-6 at 23]. A defined contribution plan, also known as an eligible individual account plan ("EIAP"), is a plan in which each employee plan participant has a separate account funded voluntarily by a combination of the participant's pre-tax and after-tax contributions and employer matching

8

contributions.  See 29 U.S.C. § 1002(34).  In the case of both Plans, the participant accounts were invested in investment vehicles selected by the employee participant, who bore the risk of investment gains or losses. [Complaint, Doc. 104 at ¶¶29-56; Wachovia SPD at 14-15, Doc. 119- at 14-15; AGE SPD at 14-15, Doc. 119-5 at 18-19].

The Plans were funded through both voluntary employee contributions and employer contributions.  Wachovia matched employee contributions to the Wachovia Plan in amounts up to 6% of Benefits Pay. With respect to the AGE Plan, Wachovia contributed 5% of a participant's eligible earnings per calendar year, regardless of whether the participant contributed payroll deductions, and also made discretionary contributions based on the Company's profit.  The first 1% of matching contributions in the Wachovia Plan, and a portion of the Company's contributions under the AGE Plan, were made in Company stock, although participants could move those investments immediately into any other investment option. [Wachovia Plan §3.04, Doc. 118-7 at 3; Wachovia SPD at 11, Doc. 119 at 11; AGE Plan §§ 6.5-6.6, Doc. 119-2 at 19; AGE SPD at 11, 14; Doc. 119-5 at 15, 18].

The Wachovia Savings Plan offered participants fourteen different investment options, while the AGE Plan offered 47 investment options. Participants were permitted to move funds among these investment options at any time. The investment options ranged from low to high risk, including a variety of mutual funds. [Wachovia Plan § 9.02, Doc. 118-7 at 39; AGE Plan § 8.2, as amended by Fourth Amendment at 1, Docs. 119-3 at 2 and 119-4 at 14; AGE SPD at 14-15, 17 and App'x A, Docs. 119-5 at 18-19, 21 and 119-7 at 9; Wachovia Investment Policy App'x 2 & 3, Doc. 119-8 at 20-21]. Among the investment options offered to participants was the Wachovia Stock Fund.[6]

The Wachovia Plan states that the Wachovia Stock Fund "shall be made available to Participants for investment" and that these funds "shall invest primarily in Wachovia Stock." [Wachovia Plan §9.02, Doc. 118-7 at

---

[6]There were two such funds within the Wachovia Plan: one for employees of Wachovia and certain subsidiaries thereof, known as the Wachovia Common Stock Fund (ESOP), and one for employees of Wachovia Securities Financial Holdings, LLC and other related partnership entities, known as the Wachovia Corporation Common Stock Fund Non-ESOP. A non-ESOP fund was used for the latter group of employees because employees of a partnership may not participate in an ESOP. See 26 U.S.C. §§ 409(l)(1) and (4). The primary difference between the two funds is that for participants in the ESOP fund, stock dividends could be paid immediately, while participants in the non-ESOP fund could not receive dividends until the participants were otherwise eligible for distributions from the plan. [See Wachovia SPD at 11, Doc. 119 at 11]. For the sake of simplicity, the Court will refer to the ESOP and non-ESOP funds available through the Wachovia Plan and the Wachovia Common Stock Fund available through the AGE Plan simply as the "Wachovia Stock Fund."

39].  Similarly, the AGE Plan states that the funds offered "shall include the [Wachovia Stock Fund]" and that such fund "shall be invested exclusively" in Wachovia common stock.  [AGE Plan §8.2, as amended by Fourth Amendment at 1, Docs. 119-3 at 2 and 119-4 at 14].

Plan participants were provided with a summary plan description ("SPD") and "Fund Fact Sheets."  Among other things, the SPD and Fund Fact Sheets informed participants that they were responsible for the investment of funds in their account and contained information on the risk ratings of, and other pertinent information concerning, each of the investment vehicles.  The Fund Fact Sheets for the Wachovia Stock Fund informed participants that, because this Fund was not diversified, it constituted the riskiest investment option offered.  The Plan documents also incorporate by reference Wachovia's securities filings.  [See Complaint, Doc. 104 at  ¶216; AGE SPD at 56-57, Doc. 119-7 at 7-8; Wachovia Fund Fact Sheet, Doc. 119-9 at 1].

During the Class Period, Wachovia common stock represented a significant portion of the Plans' assets.  As of December 31, 2006, the Wachovia Plan held approximately 34 million shares of Wachovia stock, with a market value of approximately $1.8 billion.  As of December 31,

2007, the AGE Plan held approximately 11 million units of Wachovia common stock, which held an underlying investment of 2,127,443 shares of Wachovia common stock, and which had a market value of approximately $88 million. [Complaint, Doc. 104 at ¶¶63, 64].

## B. Events Leading to This Lawsuit

Although in existence since the early 1900s, Wachovia grew to prominence in 2001 with its $14.9 billion merger with First Union Corporation. The combined companies had over $200 billion in total assets, becoming one of the largest banks in the United States. [Id. at ¶117]. By 2006, Wachovia had total assets exceeding $550 billion and was valued at approximately $54 billion. [Wachovia Form 10-Q, Doc. 118-5 at 3]. At the beginning of the alleged Class Period, on May 8, 2006, Wachovia stock was trading at $55.42 per share.

In 2005, Wachovia expanded into the wholesale mortgage market by acquiring AmNet Mortgage, Inc. ("AmNet"), the parent company of American Mortgage Network, a wholesale subprime lender. Wachovia intended to capitalize on profits from underwriting mortgage-backed securities ("MBS") and collateralized debt obligations ("CDOs") by folding AmNet into its existing operations. During 2006-07, Wachovia produced

over $10 billion in CDOs backed by pools of subprime MBS from the Company's wholesale mortgage operation.  Because Wachovia was unable to sell most of the CDOs due to the high rates of default, they were maintained on Wachovia's balance sheet at original value, even though MBS indices indicated that these assets were rapidly losing value.  The Plaintiffs allege "on information and belief" that Wachovia did not publicly disclose that it had retained any CDOs until October 2007.  In January 2008 Wachovia admitted that it had retained $6 billion, or sixty percent, of these assets.  These holdings included over $2 billion that Wachovia had hedged with entities it knew could not guarantee protection.  Wachovia neither created loss reserves for the impending devaluation of its CDO holding nor marked down the CDOs' value.  By the time Wachovia attempted to take precautionary measures in 2008, its loss reserves were insufficient and the securities had lost nearly all their value.  Wachovia announced in July 2008 that it intended to exit the wholesale mortgage market.  [Id. at ¶¶ 119-123].

In mid-2006, Wachovia acquired Golden West.  With the acquisition of Golden West, Wachovia gained a $122 billion portfolio, almost wholly comprised of high-risk option adjustable rate mortgages ("ARMs").

According to Golden West's financial statements and Wachovia and Golden West executive statements, these option ARMs were overperforming at the time of the acquisition. The loans soon began defaulting, however, resulting in significant losses. [Id. at ¶¶127-29].

After the Golden West acquisition, Wachovia continued to market these option ARMs aggressively, offering mortgage consultants double sales commissions if they steered customers to these loans, and even requiring some consultants to meet a mandatory monthly quota. Wachovia also departed from its underwriting standards, approving more borrowers with high loan-to-value ratios ("LTVs"), increasingly lower FICO scores, and/or no documentation of income or assets. As a result, Wachovia's loan portfolio asset quality indicators deteriorated significantly in 2007 and 2008. Provisions for credit losses (the amount of loans written off the books which negatively impact earnings) increased from $434 million in 2006 to $2.3 billion in 2007 and up to $22.4 billion in 2008. In its last quarter as an independent entity, Wachovia experienced $37.2 billion of credit write-downs on $93.9 billion high-risk loans, including option ARMs. Upon acquiring Wachovia, Wells Fargo disclosed that it was writing down Wachovia's loan portfolio by a further $66 billion, or 13% of the total loan

portfolio. Golden West's option ARM portfolio accounted for $32 billion of that write-down. [Id. at ¶¶130-32, 134, 137].

In 2008, Wachovia experienced massive losses. In April 2008, the Company cut its dividend by 41% and sought to raise $8 billion. In June 2008, Defendant Thompson resigned as CEO and was replaced by Defendant Steel, then undersecretary of the Treasury. On July 16, 2008, Wachovia's stock fell to a 17-year low, after a "grim report" from a stock analyst cited Wachovia's failure to provide adequate allowances for probable future loan losses. [Id. at ¶¶139-44].

On September 26, 2008, Wachovia entered into confidentiality agreements with Citigroup and Wells Fargo for a possible acquisition. Wachovia stock reached a low of $1.84 per share on September 29, 2008. Although Citigroup appeared to have finalized its bid for Wachovia, on October 2, 2008, Wachovia was approached by Wells Fargo with a superior offer, which Wachovia accepted. Wells Fargo ultimately acquired Wachovia for $15.1 billion, or approximately $7.00 per share. [Id. at ¶¶148-51; Wachovia Merger Press Release at 2, Doc. 119-10 at 3].

Under the terms of the merger agreement with Wells Fargo, Wachovia shareholders received 0.1991 shares of Wells Fargo common

stock in exchange for each share of Wachovia common stock.  By the end
of the second quarter of 2009,  Wells Fargo ranked fourth among its peers
in assets and second in the market value of its common stock.  Its net
income rose from $1.8 billion in the second quarter of 2008 to $3.2 billion in
the second quarter of 2009.  Its revenues grew to $22.5 billion, based in
part on a "strong contribution" from Wachovia, which accounted for 39% of
combined revenue.  [Wells Fargo Form 10-Q, at 7, 12; Doc. 119-11 at 4, 6].

C.    **Plaintiffs' Complaint**

In their Consolidated Complaint, the Plaintiffs assert the following

claims for breach of fiduciary duty under ERISA:

> **Count I (The "Prudent Investment Claim"):** In this
> Count, the Plaintiffs allege that Wachovia, Wells
> Fargo, the Compensation Committee Defendants, and
> the Benefits Committee Defendants breached their
> fiduciary duty by "continu[ing] to offer Wachovia stock
> as an investment option for participant contributions,
> provid[ing] Company Matching Contributions and
> Company Contributions in Wachovia stock, and
> maintain[ing] the Plans' enormous investment in the
> stock" and by "fail[ing] to conduct an appropriate
> investigation of the merits of continued investment in
> Wachovia stock." [Complaint, Doc. 104 at ¶¶ 235-50].

> **Count II (The "Duty to Monitor Claim"):** In this
> Count, the Plaintiffs allege that Wachovia, Wells
> Fargo, and the Director Defendants breached their
> fiduciary duty to monitor by failing "to monitor their

appointees, to evaluate their performance, or to have any system in place for doing so."  [Id. at ¶¶ 251-60].

**Count III (The "Disclosure to Co-Fiduciaries Claim"):** In this Count, the Plaintiffs allege that Wachovia, Wells Fargo, and Defendants Langley, Smith, Steel, Thompson, and Wurtz breached their fiduciary duty to disclose necessary information to co-fiduciaries by "possess[ing] non-public information during the Class Period about the risks posed by Wachovia stock, which they knew could be used by other fiduciaries of the Plans . . . to protect the Plans." [Id. at ¶¶ 261-66].

**Count IV (The "Disclosure to Participants and Beneficiaries Claim"):**  In this Count, the Plaintiffs allege that Wachovia, Wells Fargo, and the Benefits Committee Defendants breached their fiduciary duty to disclose by "failing to provide complete and accurate information regarding Wachovia's serious mismanagement and improper business practices and public misrepresentations ... and generally by conveying incomplete information regarding the soundness of Wachovia stock and the prudence of investing and holding retirement contributions in Wachovia equity."  [Id. at ¶¶ 267-78].

**Count V (The "Co-Fiduciary Liability Claim"):** In this Count, the Plaintiffs allege that all of the Defendants, with the exception of Wells Fargo, are liable as co-fiduciaries to the extent they are not liable directly for the above-referenced breaches.  [Id. at ¶¶ 279-90].

**Count VI (The "Knowing Participation Claim"):** In this Count, the Plaintiffs allege that Wells Fargo is liable as a knowing participant in the alleged breaches

of fiduciary duty of the other defendants.  [Id. at ¶¶ 291-94].

Although not asserted as separate causes of action, the Plaintiffs allege that certain Defendants are liable under *de facto* liability and *respondeat superior* liability principles.  [Id. at ¶¶ 67, 75, 77, 82, 84, 90, 237, 253, 281].

## IV.    ANALYSIS

### A.    Plaintiffs' Prudent Investment Claim

In Count I of their Consolidated Complaint, the Plaintiffs allege that Wachovia, Wells Fargo, the Compensation Committee Defendants, and the Benefits Committee Defendants breached their fiduciary duties by continuing to offer Wachovia stock as an investment option in the Wachovia Savings Plan and AGE Plan; by continuing to provide matching contributions in Wachovia stock; and by maintaining the Plans' investment in such stock, even though the Defendants knew or should have known that Wachovia stock had become an imprudent investment.  [Complaint, Doc. 104 at ¶239].  The Plaintiffs further allege that the Defendants failed to conduct an appropriate investigation of the merits of continued investment in Wachovia stock.  [Id. at ¶241].

The Defendants move to dismiss Count I, arguing that because the Plans mandated the inclusion of the Wachovia Stock Fund as an investment option, the Plans accorded the Defendants no fiduciary discretion to eliminate the Wachovia Stock Fund.  Even if there were some fiduciary discretion with respect to the possible removal of the Wachovia Stock Fund, the Defendants argue that the Plaintiffs have failed to plead facts to sustain a claim that the Defendants breached their fiduciary responsibilities in following the Plans' terms.  The Defendants further argue that in the absence of any basis for finding that the maintenance of the Wachovia Stock Fund was imprudent, there is no basis for a claim based on a failure to conduct a prudent investigation of this issue.  [Doc. 117 at 26-27].

Before addressing the specific arguments made by the Defendants, the Court will briefly review the scope of the duties and responsibilities imposed on a fiduciary under ERISA.

### 1.    Fiduciary Duties Under ERISA

ERISA is a "comprehensive and reticulated statute" that governs retirement and other employee benefit plans.  Mertens v. Hewitt Assocs., 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citation and

internal quotation marks omitted).  It protects the interests of employees and their beneficiaries in such plans by, among other things, "setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans."  Varity Corp. v. Howe, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

Under ERISA, a person is liable as a fiduciary only to the extent that such person has any discretionary authority or responsibility as to the administration or management of the plan.  29 U.S.C. § 1002(21)(A).[7]  "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person ... adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  Pegram v. Herdrich, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

ERISA enumerates certain obligations of those persons deemed to be fiduciaries of a plan.  For example, ERISA imposes a duty of loyalty, which requires fiduciaries to perform their duties with respect to a plan "solely in the interest of the participants and beneficiaries."  29 U.S.C. §

---

[7]A "person" is defined to include business entities such as corporations.  29 U.S.C. § 1002(9).

1104(a)(1).  ERISA further imposes a duty of prudence, which requires

fiduciaries to act "with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of

a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  Fiduciaries

also have the duty to diversify the investments of the plan "so as to

minimize the risk of large losses."  29 U.S.C. § 1104(a)(1)(C).  Finally,

fiduciaries are required to act "in accordance with the documents and

instruments governing the plan insofar as such documents and instruments

are consistent with the provisions of" ERISA.  29 U.S.C. § 1104(a)(1)(D).

The duty to diversify and the duty of prudence (to the extent that it

requires diversification of investments) do not apply to a plan that qualifies

as an "eligible individual account plan" ("EIAP") under 29 U.S.C. §

1107(d)(3).  See 29 U.S.C. § 1104(a)(2).  Congress created these

exceptions in order to encourage the formation of such plans and to

promote employee ownership of employer stock.  See Kuper v. Iovenko, 66

F.3d 1447, 1458 (6th Cir. 1995).  "These statutory exemptions, however,

do not relieve [a] fiduciary of his general obligation to discharge his

responsibilities in a prudent fashion." In re Duke Energy ERISA Litig., 281

F.Supp.2d 786, 793 (W.D.N.C. 2003).

### 2. Elimination of Wachovia Stock Fund as and Investment Option

The Plaintiffs first contend that the Defendants breached their

fiduciary duty by maintaining the Wachovia Stock Fund as an investment

option in the Plans.  In order to survive dismissal of this claim, the Plaintiffs

must have pled facts to demonstrate that the Defendants had "discretionary

authority" to eliminate the Wachovia Stock Fund as an investment option in

the Plans, such that their failure to do so constituted a breach of their

fiduciary duty of prudence.  After reviewing the plain language of the Plans

at issue, the Court concludes that the Plaintiffs cannot sustain such a

claim.

The Wachovia Savings Plan states that the Wachovia Stock Fund

"*shall* be made available to Participants for investment."  [Wachovia Plan

§9.02, Doc. 118-7 at 39 (emphasis added)].  Similarly, the AGE Plan states

that the Funds "*shall* include the [Wachovia Stock Fund]."  [AGE Plan §8.2,

as amended, Doc. 119-3 at 2 and Doc. 119-4 at 14 (emphasis added)].

The plain language of these Plans makes clear that none of the

Defendants had the discretion to eliminate the Wachovia Stock Fund as an

investment option within the Plans. See, e.g., In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708, at *7-8 (S.D.N.Y. Aug. 31, 2009) (finding plan language that company stock "shall be permanently maintained" as an available investment fund established that the defendants had no discretion to eliminate the company stock fund). Because the Plans require the maintenance of the Wachovia Stock Fund as an available investment option, elimination of that Fund would have required a modification of the Plans. See Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 249-50 (5th Cir. 2008) ("The Plan documents ... compel that the Common Stock Fund be available as an investment option for employee-participants ..... These mandatory provisions are embedded in the Plan and could not be terminated or modified absent a Plan amendment."). Modification of an ERISA plan, however, is not a fiduciary function. When employers adopt, modify or terminate ERISA plans, "they do not act as fiduciaries, but are analogous to the settlors of a trust." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (quoting Lockheed Corp. v. Spink, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996)). Therefore, an employer has no fiduciary duties and faces no liability for breach of such duties when it

comes to adopting, modifying or terminating an ERISA plan.  See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995).

For these reasons, the Court concludes that the Defendants are not liable for breach of their fiduciary duties for failing to eliminate the Wachovia Stock Fund as an investment option in the Plans.  Thus, to the extent that the Plaintiffs' claim is based on the continued maintenance of the Wachovia Stock Fund as an investment option, the Plaintiffs' Prudent Investment Claim must be dismissed.

### 3. Maintaining Investment in Wachovia Stock

Next, the Plaintiffs contend that the Defendants breached their fiduciary duty by maintaining the Plans' "enormous investment" in Wachovia stock within the Wachovia Stock Fund.  Specifically, they contend that nothing in the Plan documents required that the Wachovia Stock Fund be invested exclusively in Company stock, or that Wachovia stock had to be invested in any particular amount.  A careful review of the Plan language reveals, however, that the Defendants lacked discretionary authority to liquidate the Company stock invested within the Wachovia Stock Fund.

The AGE Plan states that the Wachovia Stock Fund offered within the Plan "*shall* be invested *exclusively* in the common stock of [Wachovia]." [AGE Plan § 8.2 as amended, Doc. 119-3 at 2 and Doc. 119-4 at 14 (emphasis added)]. The use of the term "exclusively" establishes that the Defendants as fiduciaries of the Plan had no discretion to alter the proportion of Company stock to be held in the Wachovia Stock Fund.

Similarly, the Wachovia Plan states that Wachovia Stock Fund "*shall* invest *primarily* in Wachovia stock . . . ." [Wachovia Plan § 9.02, Doc. 118-7 at 39 (emphasis added)]. The Plaintiffs argue that because this Plan required only that the Fund be invested "primarily" in Wachovia common stock, the Defendants had some discretion to determine the amount of stock to be invested in the Fund. Some courts have found that plans which require a Plan to "invest primarily" in company stock give ERISA fiduciaries discretion to invest the company stock fund in assets other than company stock. See, e.g., In re Ferro Corp. ERISA Litig., 422 F.Supp.2d 850, 859 (N.D. Ohio 2006); In re Sprint Corp. ERISA Litig., 388 F.Supp.2d 1207, 1220-21 (D. Kan. 2004); In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F.Supp.2d 511, 670 (S.D. Tex. 2003). Other courts, however, have concluded that such a provision, when read in conjunction with other

provisions of the plan, does not bestow any discretion upon the plan's fiduciaries to liquidate the company stock invested within the fund. For example, in In re Citigroup ERISA Litigation, the Citigroup stock fund was "designed to invest primarily in Citigroup Common Stock." 2009 WL 2762708, at *4. Although the plaintiffs argued that this language gave the plan fiduciaries the discretion to liquidate the company stock fund, the court concluded that this language, when considered in light of other plan provisions, made clear that the plan merely authorized a small reserve of cash and short term investments, in an amount to be determined by the investment committee, for the purpose of facilitating timely distributions or stock transactions on the open market. See id. at *8-9.

Like the Citigroup plan, the Plan documents at issue in the present case direct the Benefits Committee to implement guidelines regarding minimum and maximum levels of cash and other investments in the Wachovia Stock Fund for the purposes of facilitating intra-fund trading and paying distributions from the Fund. [Wachovia Plan § 9.04, Doc. 118-7 at 42; see also Wachovia SPD, Doc. 119 at 15]. The Plan documents further state that the Fund shall hold only "small levels of short term cash equivalent investments depending on liquidity needs and market

conditions." [Wachovia Fund Fact Sheet, Doc. 119-9 at 3]. These provisions make clear that the Wachovia Plan required the Wachovia Stock Fund to be funded primarily through the investment of Wachovia common stock, with small levels of cash reserves to facilitate trading and payouts. As such, the Defendants had no discretion, and thus no fiduciary duty, to consider eliminating Wachovia common stock from the Fund. See Citigroup, 2009 WL 2762708, at *9.

The Plaintiffs argue that even if the Plans required investment in Wachovia Stock, the Defendants had a fiduciary obligation to override the terms of the Plans in order to protect Plan participants from an imprudent investment.

ERISA requires plan fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA's provisions. 29 U.S.C. § 1104(a)(1)(D). Thus, if an ERISA plan requires that employer stock be offered as an investment option, and that the employer stock fund shall be invested primarily in employer stock, then the plan fiduciaries must follow this mandate to the extent that such mandate is consistent with ERISA. As the court in Citigroup explained:

> [I]f an ERISA plan mandates that employer stock be offered as an investment option, plan fiduciaries are required to follow that mandate as long as it is consistent with ERISA's other provisions. At least for EIAPs and ESOPs, investment in employer stock *is* consistent with ERISA's other provisions, as ERISA explicitly contemplates that EIAPs and ESOPs will invest in company stock, see § 1107(d)(3), (5)-(6), and do so without diversifying, see id. § 1104(a)(2). Those textual markers strongly suggest that an EIAP or an ESOP may, consistent with ERISA, require that employer stock be offered to participants as an investment option. Such a requirement, therefore, is a plan term that fiduciaries should be compelled to follow.

Citigroup, 2009 WL 2762708, at *11 (footnote omitted). The Court finds the reasoning of the Citigroup court to be persuasive and therefore concludes that to the extent that the Plaintiffs' Prudent Investment Claim is based on a theory that the Defendants had the fiduciary obligation to override the Plans' terms and divest the Wachovia Stock Fund of Company stock, this claim must be dismissed.

### 4. Amount of Employer Contributions

The Plaintiffs further argue that the Defendants breached their fiduciary duty by continuing to provide company contributions to the Plans in the form of Wachovia stock. Specifically, the Plaintiffs allege that Wachovia had discretion to determine the amount of matching

contributions and discretionary non-matching contributions to the Plans and to determine what portion, if any, of such contributions would be made in Wachovia stock. The Plaintiffs' argument must be rejected. Decisions regarding the amount of company contributions are funding decisions, and funding decisions are settlor functions which do not implicate fiduciary duties. See Hunter v. Caliber Sys., Inc., 220 F.3d 702, 718 (6th Cir. 2000) (decision to transfer assets to a 401(k) plan "was a business decision not subject to ERISA's fiduciary requirements"); In re RCN Litig., No. 04-5068 (SRC), 2006 WL 753149, at *6 n.4 (D.N.J. Mar. 21, 2006) (decisions to make profit sharing contributions and to change the amount of the company's matching contributions were "not functions undertaken in the Company's role of plan administrator and do not implicate ERISA's fiduciary duties"). Accordingly, to the extent that the Plaintiffs base their Prudent Investment Claim on the Defendants' decision to continue to provide company contributions in the form of Wachovia stock, this claim must be dismissed.

### 5.     Presumption of Prudence

The Court has determined that the Plans' fiduciaries had no discretionary authority to eliminate the investment of Wachovia common stock in the Plans.  Even if the Plans' fiduciaries had some discretion in eliminating this investment, however, the Plaintiffs' Prudent Investment Claim would still fail.

In <u>Moench v. Robertson</u>, 62 F.3d 553 (3d Cir. 1995), the Third Circuit held that a plan's investment in employer stock is presumptively prudent, and that this presumption can be overcome only by a showing "that the ERISA fiduciary could not have reasonably believed that continued adherence to the [plan's] direction was in keeping with the settlor's expectations of how a prudent trustee would operate." <u>Id.</u> at 571.  Although the Fourth Circuit has not yet had the opportunity to decide whether to adopt the <u>Moench</u> presumption, the majority of appellate courts that have addressed the issue has adopted the standard espoused by the <u>Moench</u> court.  <u>See</u> <u>Kirschbaum v. Reliant Energy</u>, 526 F.3d 243, 254 (5th Cir. 2008); <u>Pugh v. Tribune Co.</u>, 521 F.3d 686, 701-02 (7th Cir. 2008); <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1459-60 (6th Cir. 1995).[8]  Numerous district courts,

---

[8]The First Circuit has expressed reluctance in adopting the <u>Moench</u> standard, especially in the context of a motion to dismiss.  <u>See</u> <u>LaLonde v. Textron, Inc.</u>, 369 F.3d

including this Court, have followed <u>Moench</u> as well.  <u>See</u> <u>In re Duke Energy ERISA Litig.</u>, 281 F.Supp.2d 786, 794 (W.D.N.C. 2003); <u>see also</u> <u>In re Harley Davidson, Inc. Sec. Litig.</u>, 660 F.Supp.2d 953, 966 (E.D. Wis. 2009); <u>Morrison v. MoneyGram Int'l, Inc.</u>, 607 F.Supp.2d 1033, 1051 (D. Minn. 2009); <u>Wright v. Or. Metallurgical Corp.</u>, 222 F.Supp.2d 1224, 1233 (D. Or. 2002), <u>aff'd</u>, 360 F.3d 1090 (9th Cir. 2004); <u>Fisher v. JP Morgan Chase & Co.</u>, No. 03 Civ. 3252, 2010 WL 1257345 (S.D.N.Y. Mar. 31, 2010); <u>In re Citigroup</u>, 2009 WL 2762708, at *15-19; <u>In re Avon Products, Inc.</u>, No. 05 Civ. 6803, 2009 WL 848083, at *10 n.22 (S.D.N.Y. Mar. 3, 2009); <u>In re Bausch & Lomb</u>, No. 06 Civ. 6297, 2008 WL 5234281, at *5 (W.D.N.Y. Dec. 12, 2008).

The Plaintiffs contend that the <u>Moench</u> presumption, which was first articulated in the context of a summary judgment motion, <u>see</u> <u>Moench</u>, 62 F.3d at 556, is an evidentiary standard that is inappropriate to apply until after the parties have had an opportunity to engage in discovery.  The Third Circuit has squarely rejected this argument:

> [I]f a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is

---

1, 6 (1st Cir. 2004).  The Ninth Circuit has declined to rule on the issue.  <u>See</u> <u>In re Syncor ERISA Litig.</u>, 516 F.3d 1095, 1102 (9th Cir. 2008) ("this Circuit has not yet adopted the <u>Moench</u> presumption ... and we decline to do so now").

required to dismiss the complaint pursuant to Rule 12(b)(6). For example, in <u>Wright v. Oregon Metallurgical Corp.</u>, the Ninth Circuit concluded that "Plaintiffs' alleged facts effectively preclude[d] a claim under <u>Moench</u>, eliminating the need for further discovery." 360 F.3d at 1098. As the Court noted, "published accounts of [the employer's] earnings and financial fundamentals during the relevant period, attached to the complaint, demonstrate that [the employer] was far from the sort of deteriorating financial circumstances involved in <u>Moench</u> and was, in fact, profitable and paying substantial dividends throughout that period." <u>Id.</u> .... We find the Ninth Circuit's reasoning to be logical, and see no reason to allow this case to proceed to discovery when, even if the allegations are proven true, [the plaintiff] cannot establish that defendants abused their discretion.

<u>Edgar v. Avaya, Inc.</u>, 503 F.3d 340, 349 (3d Cir 2007). Following the Third Circuit's lead, numerous courts have applied <u>Moench</u> when evaluating a Rule 12(b)(6) motion. <u>See, e.g.</u>, <u>Graden v. Conexant Sys., Inc.</u>, 574 F.Supp.2d 456, 462-64 (D.N.J. 2008); <u>In re Dell, Inc. ERISA Litig.</u>, 563 F.Supp.2d 681, 692-93 (W.D. Tex. 2008); <u>In re RadioShack Corp. ERISA Litig.</u>, 547 F.Supp.2d 606, 614 (N.D. Tex. 2008); <u>Citigroup</u>, 2009 WL 2762708, at *16; <u>In re Bausch & Lomb</u>, 2008 WL 5234281, at *4-6; <u>Halaris v. Viacom, Inc.</u>, No. 3:06-CV-1646-N, 2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008). The Court finds the reasoning of these cases persuasive

and therefore concludes that the <u>Moench</u> presumption may be applied in the context of a motion to dismiss.

The Plaintiffs further contend that the <u>Moench</u> presumption is applicable only to ESOPs and therefore is not applicable to the Plans at issue in this case.  This argument also must be rejected.  An ESOP is just one type of pension plan characterized as an eligible individual account plan or EIAP.  <u>See</u> 29 U.S.C. § 1107(d)(3)(A).  Noting the similarities between ESOPs and other EIAPs, courts have extended the principles set forth in <u>Moench</u> with respect to ESOP plan trustees to cover all eligible individual account plans, including 401(k) plans with company stock fund investments.  <u>See, e.g.</u>, <u>Edgar</u>, 503 F.3d at 347-49; <u>In re Duke Energy</u>, 281 F. Supp. 2d at 794 n.5; <u>In re Citigroup</u>, 2009 WL 2762708, at *15-19; <u>In re Avon Products</u>, 2009 WL 848083, at *10 n.22; <u>In re Bausch & Lomb</u>, 2008 WL 5234281, at *5.

The judicial presumption of prudence substantially raises the threshold for holding plan fiduciaries responsible for investment losses arising from employer stock investments.  As the Fifth Circuit has observed:

> One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of

company stock, they have a fiduciary duty to depart from [plan] provisions.  Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest.  Less than rigorous application of the <u>Moench</u> presumption threatens its essential purpose.  A fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance.  In such a case, he could be sued for not selling if he adhered to the plan, but also sued for deviating from the plan if the stock rebounded.

<u>Kirschbaum</u>, 526 F.3d at 256 (footnote omitted).

The "persuasive and analytically rigorous facts" needed to rebut the <u>Moench</u> presumption include facts giving rise to a reasonable belief that the viability of the company itself is threatened.  Courts have routinely dismissed breach of fiduciary claims that fail to allege such facts.  <u>See, e.g.</u>, <u>Edgar</u>, 503 F.3d at 348-49 (claims failed to allege a "dire situation"); <u>Pugh</u>, 521 F.3d at 700-02 (claims failed to allege company's financial condition warranted plan fiduciaries to override terms of the plan); <u>In re Avon Products</u>, 2009 WL 848083, at *10 (company was not "facing such a ruinous financial situation that maintaining the Plan's interest in its common stock was self-evidently financially destructive to the Plan"); <u>In re Bausch & Lomb</u>, 2008 WL 5234281, at *6 (claims did not indicate that company's financial situation was "seriously deteriorating"); <u>In re Duke Energy</u>, 281

34

F.Supp.2d at 795 (presumption not overcome absent evidence of an "impending collapse" or other "dire circumstances"); <u>Wright</u>, 222 F. Supp. 2d at 1233 (company was financially viable and continuing to pay dividends); <u>In re Citigroup</u>, 2009 WL 2762708, at *18 (concluding allegations of imprudent and risky business strategies that resulted in substantial losses to the company did "not suggest the type of dire situation that would have caused defendants to believe that continued adherence to the Plans' mandate regarding Citigroup stock was no longer in keeping with the settlor's expectations of how a prudent trustee would operate") (citations and internal quotation marks omitted).

The strength of the presumption, and the level of proof required to rebut it, also is evident from the numerous cases dismissing prudence claims even where the stock had experienced a significant decline in price. <u>See, e.g.</u>, <u>Kuper</u>, 66 F.3d at 1451, 1459 (80% drop); <u>Wright</u>, 360 F.3d at 1095-96 (75% drop); <u>In re Duke Energy</u>, 281 F.Supp.2d at 795 (55% drop); <u>In re Citigroup</u>, 2009 WL 2762708, at *18 (52% drop). In these cases, courts concluded that the large declines in stock, standing alone, were not sufficient to sustain a claim of imprudence because the companies had retained significant value. <u>See</u> <u>Wright</u>, 360 F.3d at 1099 ("Mere stock

fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the <u>Moench</u> presumption.").

In the present case, the Plaintiffs argue that a variety of circumstances – including the precipitous decline in Wachovia's stock price, the imminent collapse of Wachovia prior to its acquisition by Wells Fargo, and the Company's myriad of improper business and accounting practices – demonstrate that Wachovia was suffering from dire financial circumstances that artificially inflated the Company's stock price such that a reasonably prudent fiduciary could not have reasonably believed that the Plans' continued investment in Wachovia stock was prudent. Upon careful consideration of the Plaintiffs' well-pled allegations, however, the Court cannot conclude that the Plaintiffs have overcome the <u>Moench</u> presumption. While Wachovia's stock price experienced a significant decline during the alleged Class Period[9], Wachovia continued to have real value. By the Plaintiffs' own admission, the Company was still valued at $15.1 billion ($7.00 per share) at the time of the merger with Wells Fargo. Following the merger, what had been Wachovia stock continued to retain

---

[9]As noted previously, Wachovia stock was trading at $55.42 per share at the beginning of the Class Period. At the time of the merger with Wells Fargo, Wachovia was valued at $7.00 per share, a decrease in value of approximately 87%.

significant value, as Wachovia contributed to Wells' Fargo's recovery and growth. By the end of the second quarter of 2009, Wells Fargo ranked second among its peers in market value of its common stock and recorded double-digit growth. The significant value retained by Wachovia's stock during the Class Period, even as alleged in the Complaint, precludes the possibility that the Plaintiffs can rebut the Moench presumption and thereby sustain a fiduciary breach claim.[10]

Although the Plaintiffs allege that Wachovia "faced the choice of filing for bankruptcy or being sold to a competitor in a forced sale" [Complaint, Doc. 104 at ¶147], the facts as alleged in the Complaint confirm that Wachovia reasonably anticipated negotiating a sale to a buyer that would pay billions of dollars for the Company. Prudence, therefore, did not require a massive sell-off of Wachovia stock at "rock bottom" prices, in contravention of the Plan design, nor did it warrant measures to prevent additional stock acquisitions by Plan participants. See DiFelice v. Fiduciary Counselors, Inc., 398 F.Supp.2d 453, 469 (E.D. Va. 2005) ("Given the

---

[10]Indeed, had the Defendants divested the Plans of Wachovia common stock, "they would have risked liability for having failed to follow the terms of the Plans." Edgar, 503 F.3d at 348-49; Moench, 62 F.3d at 571-72 ("if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive").

possibility that U.S. Airways might avoid bankruptcy filing by securing employee concessions, [the fiduciary's] decision not to engage in a massive sell-off of the Company Stock Fund's holdings of U.S. Air Group shares is well within the range of prudent conduct expected of a fiduciary.").

For these reasons, the Court concludes that even if the Defendants had some fiduciary discretion with respect to the investment of Wachovia stock in the Plans, the Plaintiffs have failed to plead sufficient facts to overcome the <u>Moench</u> presumption of prudence. Accordingly, their Prudent Investment Claim must be dismissed.

### 6.    Duty to Investigate

Count I includes a claim that the Plan fiduciaries failed to conduct a prudent investigation of an investment alternative when the price of Wachovia stock was declining. In the absence of a viable claim that maintaining the Wachovia Stock Fund was imprudent, the Plaintiffs' claim based on a failure to investigate must fail as well. <u>See</u> <u>In re Citigroup</u>, 2009 WL 2762708, at *19 ("Since the [defendants] had no discretion to divest the Plans of Citigroup stock -- and since plaintiffs have not, in any event, overcome the presumption that Citigroup stock was a prudent

investment -- plaintiffs cannot show that a failure to investigate led to any losses to the Plan.").[11]

## B.    The Disclosure Claims

In Counts III and IV of the Consolidated Complaint (collectively the "Disclosure Claims"), the Plaintiffs allege breach of fiduciary duties arising from material misrepresentations or omissions in connection with the Plans' investment in Wachovia stock.  Specifically, in Count III, the Plaintiffs allege that the Defendants Wachovia and Wells Fargo, as well as individual Defendants Langley, Smith, Steel, Thompson, and Wurtz, possessed non-public information about the risks posed by Wachovia stock which they should have disclosed to their co-fiduciaries in order "to protect the Plans." [Complaint, Doc. 104 at ¶264].  In Count IV, the Plaintiffs allege that the Defendants Wachovia, Wells Fargo, and the Benefits Committee failed to provide complete and accurate information to the Plans' participants and beneficiaries "regarding Wachovia's serious mismanagement and improper business practices and public misrepresentations."  [Id. at ¶ 273].  The

---

[11]Additionally, to the extent that the Plaintiffs contend that the Defendants were operating under a conflict of interest [Complaint, Doc. 104 at ¶¶247, 224-26], that claim is derivative of their Prudent Investment Claim and thus fails for the reasons set forth above.  See In re Duke Energy, 281 F.Supp.2d at 795; In re Avon Products, 2009 WL 848083, at 12 n.28.

Plaintiffs do not identify any specific misrepresentations made in any of the Plan communications, instead alleging "upon information and belief" that the incorporation by reference of the Company's SEC filings and other public disclosures, constituted material misrepresentations of the Company's financial condition.  [Id. at ¶ 216].

"It is well-established that an ERISA fiduciary 'may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed." Edgar, 503 F.3d at 350 (quoting In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996)).  This "duty to inform is a constant thread in the relationship between beneficiary and trustee; it is not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Unisys, 74 F.3d at 441 (quoting Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1994)).

The duties under ERISA to speak truthfully and not to mislead arise, however, only when communications are made in a fiduciary capacity.  In Varity Corp. v. Howe, the Supreme Court held that statements about a company's financial condition become subject to ERISA's fiduciary duties only if they are made by a plan representative and are intentionally

connected to statements about a plan's benefits. 516 U.S. at 505,116 S.Ct. 1065. Consistent with the Supreme Court's holding in Varity, courts routinely have dismissed ERISA fiduciary claims when the challenged statements consisted of SEC filings and other public statements made to the market, as such communications were made in a corporate capacity, not as an ERISA fiduciary. See, e.g., Edgar, 503 F.3d at 350-51; In re Citigroup, 2009 WL 2762708, at *22-24; In re Avon Products, 2009 WL 848083, at *13-14; In re Bausch & Lomb, 2008 WL 5234281, at *7-8. The fact that the SEC filings and other public statements may have been incorporated by reference into the Plan documents does not alter this conclusion. The federal securities laws require employers to offer plan participants access to the SEC filings that are provided to any potential purchaser of the employer's stock. 15 U.S.C. § 77j; 17 C.F.R. § 230.428. "This requirement is usually fulfilled by incorporating [by] reference a company's SEC filings into the plan's prospectus/SPD." In re Bausch & Lomb, 2008 5234281, at *8. Thus, by incorporating its SEC filings into the Plan documents, Wachovia "was discharging its corporate duties under the securities laws, and was not acting as an ERISA fiduciary." Kirschbaum, 526 F.3d at 257.

To the extent that the Plaintiffs allege that the Defendants possessed non-public information which should have been disclosed, these allegations are also unavailing. The Plan documents make clear that Plan participants are responsible for the selection of their investments and that the Wachovia Stock Fund was undiversified (and thus the riskiest of the available investment options). These disclosures were sufficient to satisfy any obligation on the part of the Defendants not to misinform Plan participants about the risks associated with investing in the Wachovia Stock Fund. See Edgar, 503 F.3d at 350 ("[The defendants] did not have a duty to 'give investment advice' or 'to opine on' the stock's condition.... Rather, the information provided Plan participants the opportunity to make their own informed investment choice"). The Plaintiffs have failed to allege any basis for claiming that disclosures were required to correct or to supplement these previous Plan communications. See In re Bausch & Lomb, 2008 WL 5234281, at *9.

Even if there was an affirmative duty to disclose information about the risks posed by investment in the Wachovia Stock Fund, the Complaint fails to set forth sufficient allegations to sustain such a claim here. While the Complaint alleges in a general and conclusory fashion that the "Defendants

breached their duty to inform participants by failing to provide complete and accurate information regarding Wachovia's serious mismanagement and improper business practices and public misrepresentations," [Complaint, Doc. 104 at ¶273], there are no allegations that the members of the Benefits Committee – the entity charged with the fiduciary responsibility under the Plan for communicating with Plan participants – were aware of these alleged facts and circumstances, let alone that the Committee members could have reasonably concluded that such circumstances called into question the soundness of continued investment in Wachovia stock.[12]

For all of these reasons, the Court concludes that the Plaintiffs' Disclosure Claims (Counts III and IV) must be dismissed.

## C. Secondary Liability Claims

In Count II of the Consolidated Complaint, the Plaintiffs allege that Wachovia, Wells Fargo, and the Director Defendants breached their fiduciary duty to monitor by failing "to monitor their appointees, to evaluate their performance, or to have any system in place for doing so."

---

[12]In addition, had the Defendants divested the Plans of Wachovia stock based on information that was not available to the public, they could have faced liability under the federal securities laws for illegal insider trading. See Edgar, 503 F.3d at 349-51; In re Bausch & Lomb, 2008 WL 5234281, at *7-8; In re Avon Products, 2009 WL 848083, at *15.

[Complaint, Doc. 104 at ¶¶ 251-60]. In Count V, the Plaintiffs allege that all of the Defendants, with the exception of Wells Fargo, are liable as co-fiduciaries to the extent they are not liable directly for the claimed fiduciary breaches. [Doc. 104 at ¶¶ 279-90]. In Count VI, the Plaintiffs allege that Wells Fargo is liable as a knowing participant in the alleged fiduciary breaches of other defendants. [Id. at ¶¶ 291-94].

Because the Court has concluded that there are no viable underlying claims for fiduciary breach, these remaining claims must be dismissed as well. See, e.g., In re Duke Energy, 281 F.Supp.2d at 793-94; In re Avon Products, 2009 WL 848083, at *16; In re Bausch & Lomb, 2008 WL 5234281, at *10.

## V. CONCLUSION

For the foregoing reasons, **IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint with Prejudice [Doc. 116] is **GRANTED**, and this case is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: August 6, 2010

Martin Reidinger
United States District Judge