UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN RE WACHOVIA CORPORATION ERISA LITIGATION | MASTER FILE: 3:09-CV-00262-MR |
| THIS DOCUMENT RELATES TO: All Actions | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF ERISA CLASS ACTION SETTLEMENT, FOR SETTLEMENT CLASS CERTIFICATION, AND FOR APPROVAL OF PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND ...................................3

        A.      Description of Litigation ......................................................3

        B.      Investigation of Claims and Discovery ..............................4

        C.      Settlement Negotiations ......................................................5

        D.      Terms of the Settlement Agreement ..................................6

        E.      Reasons for the Settlement..................................................8

III.    ARGUMENT.................................................................................9

        A.      The Settlement Should Be Granted Final Approval if It Is
                Found to Be Fair, Reasonable and Adequate.....................9

        B.      The Proposed Settlement Meets the Fairness Standard. ...................11

                1.      The Posture of the Case at the Time the Settlement
                        Was Proposed......................................................12

                2.      The Extent of Discovery that Had Been Conducted...............12

                3.      The Circumstances Surrounding the Settlement
                        Negotiations ........................................................13

                4.      The Experience of Class Counsel in ERISA Class
                        Actions ...............................................................13

        C.      The Proposed Settlement Meets the Adequacy Standard. ...............14

                1.      The Relative Strength of the Plaintiffs' Case on the
                        Merits and the Existence of Strong Defenses or
                        Difficulties of Proof ...............................................15

                2.      The Anticipated Duration and Expense of
                        Additional Litigation..............................................16

                3.      The Solvency of Defendants....................................17

4.    The Degree of Opposition to the Settlement ..........................17

D.    The Plan of Allocation is Fair and Reasonable and
      Should be Approved..........................................................18

E.    This Court Should Certify the Settlement Class. .............................21

      1.    *Wal-Mart v. Dukes* does not undermine the
            Settlement................................................................22

IV.   CONCLUSION...........................................................................25

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ............................................................10

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)...........................................................................11

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..........................................................18

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ............................................................10

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ...................................................11, 14

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    855 F. Supp. 825 (E.D.N.C. 1994) ................................. 9, 10, 12, 15

*In re Citigroup ERISA Litig.*,
    No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ..........................16

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................11, 21

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ........................................ 9, 11, 13, 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) ........................................................19

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ...................................... passim

*In re Oracle Sec. Litig.*,
    No. 90-0931, 1994 WL 502054 (N.D. Cal. June 18, 1994) ............................18

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ............................................................23

*In re Serzone Prods. Liab. Litig.*,
  231 F.R.D. 221 (S.D.W. Va. 2005) ..................................................................15

*Merck & Co., Inc. Securities, Derivative & ERISA Litig.*,
  MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ...............................23

*S.C. Nat'l Bank v. Stone*,
  139 F.R.D. 335 (D.S.C. 1991) .................................................................14, 15

*Smith v. Krispy Kreme Doughnut Corp.*,
  No. 05-187 (M.D.N.C. Jan. 10, 2007) .............................................................21

*United States v. North Carolina*,
  180 F.3d 574 (4th Cir. 1999) ...........................................................................11

*Veera v. Ambac Plan Admin. Order Comm.*,
  No. 10-4191, 2011 WL 43534 (S.D.N.Y. Jan. 6, 2011) ...................................16

*Wal-Mart Stores, Inc. v. Dukes*,
  --- S.Ct. ----, 2011 WL 2437013 (2011) ............................................. 22, 23, 24

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ...............................................................................13

*Yost v. First Horizon Nat'l Corp.*,
  No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011).........................24

## Statutes

Employee Retirement Income Security Act of 1974, as amended,
  ("ERISA"), 29 U.S.C. § 1001, *et seq.*................................................................1

ERISA § 409, 29 U.S.C. § 1109 .....................................................................4, 23

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)....................................................4, 23

## Rules

Fed. R. Civ. P. 23(b)(1)..............................................................................7, 22, 23

Fed. R. Civ. P. 23(b)(1)(B) ...........................................................................23, 24

Fed. R. Civ. P. 23(b)(2)...................................................................................7, 22

Fed. R. Civ. P. 23(e).................................................................................................9

Fed. R. P. Civ. 23(b)(1)(A) ............................................................................23, 24

**Other Authorities**

*Manual for Complex Litigation* § 21.63 (4th ed. 2004)...........................................9

# I.   INTRODUCTION

Plaintiffs David W. Allen, Robert M. Cominsky, Richard F. Dziak, Rose Hansen, Alan A. Hardman, Jerry R. Kelley, Jr., Denise A. Tuttle, and Todd A. Wright ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and the proposed Class, hereby move for final approval of the proposed Settlement of this action, which asserts claims for breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001, *et seq*.[1] The proposed Class Action Settlement Agreement[2] ("Settlement Agreement" or "Settlement") resolves Plaintiffs' and Class Members' stated claims for breaches of fiduciary duty against all Defendants.

The proposed Settlement, which the Court preliminarily approved on March 2, 2011 (the "Preliminary Approval Order"), consists of a cash payment of $12.35 million.  Additionally, the Settlement provides for Wells Fargo & Co. ("Wells Fargo") to pay for the implementation of the Plan of Allocation.

---

[1] Plaintiffs are filing contemporaneously herewith Class Counsel's Motion for Award of Attorneys' Fees and Expenses and Named Plaintiff Case Contribution Awards.

[2] A copy of the Class Action Settlement Agreement ("Settlement Agreement") without exhibits is attached as Exhibit A to the Declaration of Derek W. Loeser in Support of Plaintiffs' Motion for Final Approval of ERISA Class Action Settlement, for Settlement Class Certification, and for approval of Plan of Allocation, and Class Counsel's Motion for Award of Attorneys' Fees and Expenses and Named Plaintiff Case Contribution Awards ("Loeser Declaration" or "Loeser Decl.").  Capitalized terms not otherwise defined in this Memorandum have the same meanings ascribed to them in the Settlement Agreement.

The Settlement represents a significant recovery for the Settlement Class. Based on an evaluation of the facts, governing law and the recognition of the substantial risks of continued litigation, including the fact that Plaintiffs' action was dismissed with prejudice by the Court and settled after an appeal to the Fourth Circuit was filed, Plaintiffs and Class Counsel (Keller Rohrback L.L.P. & Keller Rohrback P.L.L.C., "Keller Rohrback") submit that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the proposed Settlement Class by providing a meaningful recovery now. Resolution of this case at this juncture allows the Parties to avoid years of litigation that could deplete potential future recovery for the Settlement Class. Moreover, continued litigation could result in a judgment or verdict lesser than the recovery under the Settlement Agreement, or in no recovery at all.

Since the Court preliminarily approved the Settlement, notice of the Settlement has been issued to Settlement Class members pursuant to the terms of the Preliminary Approval Order. For the reasons discussed below and in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Proposed Settlement ("Preliminary Approval Memo") (Dkt. No. 153), Plaintiffs respectfully request that the Court enter the Final Approval Order[3]

_____

[3] The [Proposed] Final Order and Judgment ("Final Approval Order") is attached to the Loeser Declaration as Exhibit B. The Final Approval Order is an updated

(1) granting final approval of the Settlement; (2) confirming certification of the Settlement Class; (3) determining that the forms and methods of Notice to the Settlement Class were appropriate and sufficient; and (4) approving the proposed Plan of Allocation of the Settlement Fund.[4]

## II.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  Description of Litigation

Class Counsel filed their initial complaint in the Southern District of New York on June 11, 2008.  On August 26, 2008, Class Counsel moved for consolidation and for appointment of interim lead counsel.

Class Counsel was appointed interim lead counsel by the Honorable Naomi Reice Buchwald on December 24, 2008.  On February 27, 2009, Class Counsel responded to Defendants' motion to transfer the Wachovia ERISA litigation to this district, and participated in oral argument regarding same on June 18, 2009.

After this consolidated Action was transferred to this district on June 18, 2009, Plaintiffs filed a Consolidated Complaint ("Complaint" or "Compl.") on September 18, 2009 (Pls.' Consolidated Compl. for Violations of the Employee Retirement Income Security Act, Sept. 18, 2009 (Dkt. No. 104)).

---

version of the Final Approval Order agreed to by the Parties that was attached to the Settlement Agreement; Class Counsel filled in the dates for compliance found in the March 2, 2011 Preliminary Approval Order.
[4] The [Proposed] Plan of Allocation is attached to the Loeser Declaration as Exhibit C.

Defendants moved to dismiss the Complaint on October 19, 2009 (Defs.'
Mot. to Dismiss Pls.' Consolidated Compl. with Prejudice, Oct. 19, 2009 (Dkt.
No. 116)).  After briefing, the Court dismissed the Complaint, with prejudice, on
August 6, 2010 (Mem. of Decision & Order, Aug. 6, 2010 (Dkt. No. 144)).

Plaintiffs filed a timely Notice of Appeal (Pls.' Notice of Appeal, Sept. 2,
2010 (Dkt. No. 146)).  Plaintiffs filed their opening brief in the United States Court
of Appeals for the Fourth Circuit on November 17, 2010.  On December 7, 2010,
the Parties filed a joint motion to remand the case to the Western District of North
Carolina for settlement purposes, and the motion was granted ten days later.

## B.    Investigation of Claims and Discovery

The Complaint seeks to recover losses under ERISA sections 409 and
502(a)(2), 29 U.S.C. sections  1109 and 1132(a)(2), suffered by the Plans and the
members of the Settlement Class as a result of alleged breaches of fiduciary duty.
The Complaint alleges six causes of action: (1) failure to prudently and loyally
manage the Plans' investment in Wachovia stock; (2) failure to monitor fiduciary
appointees; (3) failure to disclose necessary information to co-fiduciaries;
(4) failure to provide Plan participants with complete and accurate information
regarding Wachovia stock; (5) failure to prevent breaches by co-fiduciaries of their
duties of prudent and loyal management, adequate monitoring, and complete and
accurate communications; and (6) knowing participation in breaches.

Class Counsel, Keller Rohrback, have conducted a thorough investigation into Plaintiffs' claims and the allegations set forth in the Complaint, including: (1) reviewing and analyzing documents that were publicly available concerning the Company's financial condition and the performance of Company stock during the relevant time period, including but not limited to: news articles, related complaints and pleadings, press releases, analyst reports, and regulatory filings; (2) inspecting, reviewing, and analyzing numerous documents concerning the Plans and the administration of the Plans; (3) interviewing participants of the Plans and reviewing and analyzing documents collected from participants; and (4) researching the applicable law with respect to the claims asserted and the potential defenses thereto.

### C.    Settlement Negotiations

Class Counsel were cognizant that there was no guarantee of success in their appeal, nor was there a guarantee of success back at the district court should the appeal be successful, and were aware of the risk of depletion of available insurance coverage.  Accordingly, the Parties engaged in mediation with Robert A. Meyer, Esq., a nationally recognized and highly experienced mediator, on December 8, 2010.  Following contentious arm's-length negotiations, the Parties reached an agreement in principle to settle the Action for $12.35 million and signed the term sheet on December 8, 2010.  The Parties executed the final Settlement Agreement

5

on February 10, 2011.  Following the Preliminary Approval Hearing, the

Settlement Agreement was amended on February 28, 2011.

### D.    Terms of the Settlement Agreement

The complete terms and conditions of the Settlement are set forth in Exhibit

A to the Loeser Declaration.  The following is a summary of the principal terms of

the Settlement Agreement.

**1.    Class Notice and Internet/Publication Notice.**  Pursuant to the

Court's Preliminary Approval Order, the Class Notice was sent within 30 days of

the Preliminary Approval Order by first-class mail to each Settlement Class

members' last known address.  *See* Loeser Decl., Ex. D (Affidavit of Anya

Verkhovskaya ("Verkhovskaya Aff.")) ¶ 9.  Likewise, within 30 days of the

Court's Preliminary Approval Order, the Internet/Publication Notice was made

available at www.erisafraud.com and www.kellersettlements.com.  *See* Loeser

Decl. ¶ 15.

**2.    Plan of Allocation.**  The plan or formula of allocation of the Net

Settlement Amount is the means by which the Net Settlement Amount will be

divided and distributed amongst the Settlement Class.  Simply put, the Plan of

Allocation will ensure that each Settlement Class member's *pro rata* share of the

Net Settlement Fund corresponds to their losses as a percentage of the total losses

suffered by Settlement Class members' investments in Company Stock during the

Class Period.[5]

**3.      Releasees.**  The Settlement Agreement discharges the class's Released Claims—as defined below—against Releasees, which generally includes Defendants and any Person who served as a trustee, investment manager, service provider, record-keeper, or named or functional fiduciary (including de facto fiduciaries) of the Plans, any and all predecessors, Successors-In-Interest, present and former Representatives, direct or indirect parents and subsidiaries, attorneys and any Person that controls, is controlled by, or is under common control with any of the foregoing, including, without limitation, every person who was a director, officer, governor, management committee member, in-house counsel, employee, or agent of Wachovia, Wells Fargo, and their subsidiaries and affiliates, together with, for each of the forgoing, any and all present or former Representatives, insurers, reinsurers, consultants, attorneys, administrators, employee benefit plans, investment advisors, investment underwriters, and spouses.

**4.      Settlement Amount.**  The Parties agreed to settle the Action for the sum of $12.35 million in cash.  In addition, Wells Fargo has agreed to implement the Plan of Allocation.

**5.      Settlement Class.**  Pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2), the Settlement Agreement includes a non-opt out class

---

[5] *See* Loeser Decl., Ex. C.

consisting of all persons other than Defendants who were participants in or beneficiaries of the Wachovia Savings Plan at any time between May 8, 2006 and December 31, 2008 and/or participants in or beneficiaries of the A.G. Edwards, Inc. Retirement and Profit Sharing Plan at any time between October 1, 2007 and December 31, 2008 (collectively, the "Class Period"), and whose Plan account included units of investments in Wachovia Corporation stock.

6. **Released Claims.** Sections 4.1 and 1.20 of the Settlement Agreement define the Plaintiffs' Released Claims, Plans' Released Claims and Defendants' Released Claims, which include, in general terms, all claims raised or that could have been raised in this Action that pertain to the allegations of the Complaint. The Settlement Agreement does not in any way bar, limit, waive, or release any right by members of the Settlement Class to recover any moneys resulting from a judgment in or settlement of the non-ERISA actions listed in section 4.1.5 of the Settlement Agreement. However, section 4.1.5 shall not permit any member of the Settlement Class to recover more than 100% of their losses.

### E. Reasons for the Settlement

Plaintiffs have entered into this proposed Settlement with an understanding of the strengths and weaknesses of their claims. This understanding is based on: (1) the motion practice undertaken by the Parties; (2) the investigation, research, and discovery as outlined above; (3) the likelihood that Plaintiffs would prevail on

appeal; (4) the likelihood that Plaintiffs would prevail at trial if their appeal is granted; (5) the range of possible recovery; (6) the substantial complexity, expense, and duration of litigation necessary to prosecute this action through appeal, and if successful there, through trial, post-trial motions, and likely additional appeals, and the significant uncertainties in predicting the outcome of this complex litigation; (7) Defendants' determination to fight and contest every aspect of the case; and (8) the significant risk that any available insurance would be depleted over the course of the litigation. Having undertaken this analysis, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval.

## III. ARGUMENT

**A.    The Settlement Should Be Granted Final Approval if It Is Found to Be Fair, Reasonable and Adequate.**

Although the procedure for approval of a class action settlement is not specifically delineated in Rule 23(e), a two-step procedure is set forth and approved in the *Manual for Complex Litigation* § 21.63, at 318-24 (4th ed. 2004), which is universally followed by federal courts considering class action settlements. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). First, the Court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is "'within the range of possible

approval' or, in other words whether there is 'probable cause' to notify the class of the proposed settlement." *Horton*, 855 F. Supp. at 827 (citing *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998)).

On March 2, 2011, the Court completed this first step by granting preliminary approval of the Settlement Agreement, granted preliminary class certification for settlement purposes, approved the form and method for disseminating class notice, and set a date for the hearing on final approval of the Settlement.

Second, the Court conducts a final "fairness" hearing which provides all interested parties with an opportunity to be heard on the proposed settlement. The ultimate purpose of this procedure is to ensure that the settlement is "fair, reasonable and adequate," *id.* at 828, and that all class members and/or objectors have the ability to be heard.

"[A]pproval of a class action settlement is committed to 'the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'" *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (quoting *Evans*, 475 U.S. at 742). The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits

of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450
U.S. 79, 88 n.14 (1981). Because the object of settlement is to avoid, not confront,
the determination of contested issues, the approval process should not be converted
into an abbreviated trial on the merits. *See Flinn v. FMC Corp.*, 528 F.2d 1169,
1172-73 (4th Cir. 1975) (noting that the settlement hearing is not "a trial or a
rehearsal of the trial" (quotation marks and citation omitted)). Instead, courts have
consistently held that the function of a judge reviewing a settlement is to determine
whether the proposed settlement is fundamentally fair, adequate and reasonable,
*see United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999), "without
modifying [the settlement's] terms, and without substituting its business judgment
for that of counsel, absent evidence of fraud or overreaching." *In re Global
Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (internal
quotation marks and citations omitted).

**B.      The Proposed Settlement Meets the Fairness Standard.**

In assessing the "fairness" of a proposed settlement, the district court should
consider: "(1) the posture of the case at the time settlement was proposed, (2) the
extent of discovery that had been conducted, (3) the circumstances surrounding the
negotiations, and (4) the experience of counsel in the area of . . . class action
litigation." *Jiffy Lube*, 927 F.2d at 159.

### 1. The Posture of the Case at the Time the Settlement Was Proposed

In the present case, the Parties litigated for two and a half years before entering into the Settlement. Before reaching agreement on the Settlement, Class Counsel conducted an extensive investigation, the Parties briefed and contested a Motion to Dismiss, and Plaintiffs filed — and partially briefed — an appeal from the Court's Order dismissing the Complaint with prejudice. The Parties engaged in settlement discussions in a full-day mediation, which allowed the Parties to fully explore their respective factual and legal positions.

### 2. The Extent of Discovery that Had Been Conducted

The Court next considers the extent of discovery conducted as a means of evaluating a settlement for final approval. *See Horton*, 855 F. Supp. at 829. There is, however, no minimum or definitive amount of discovery that must be undertaken to satisfy this fairness consideration. *See id.* at 830. Indeed, discovery may not be necessary for the parties to fully evaluate the merits of the plaintiffs' claims. In *Jiffy Lube*, the Fourth Circuit approved the proposed partial class action settlement — with the exception of a settlement provision about a nonsettling defendant's right of setoff — prior to any formal discovery. *See* 927 F.2d at 159. In *Horton*, the court found that production of under 4,000 pages of documents and two "confirmatory" depositions to be sufficient. *See* 855 F. Supp. at 829.

In the present case, Defendants produced certain initial documents that

enabled Class Counsel to determine key issues regarding the nature of the Plans and the liabilities of various Defendant fiduciaries. To use the words of the *MicroStrategy* court, "although this settlement came early on — prior to the completion of formal discovery — it is clear that plaintiffs 'have conducted sufficient informal discovery and investigation to . . . evaluate [fairly] the merits of Defendants' positions during settlement negotiations.'" 148 F. Supp. 2d at 664-65 (citation omitted).

### 3. The Circumstances Surrounding the Settlement Negotiations

In *MicroStrategy*, the court recognized that, as in the present case, the settlement resulted from arm's length negotiations conducted by counsel with the "experience and ability…necessary to [effectuate] representation of the class's interests." *Id*. at 665 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)). Here, the Parties engaged in settlement negotiations with an experienced mediator and the terms of the Settlement Agreement were hard fought.

### 4. The Experience of Class Counsel in ERISA Class Actions

Courts also examine the experience of class counsel to determine whether there was any collusion between the defendants and class counsel in reaching the proposed settlement. *Jiffy Lube*, 927 F.2d at 159. The documents Plaintiffs are submitting in support of the Settlement establish that it was heavily negotiated and there was no collusion.

As discussed below, Keller Rohrback has extensive experience in handling ERISA class action cases and other complex litigation. Keller Rohrback is a national leader in this area of litigation. *See* Loeser Decl. ¶¶ 48-50. Additionally, Wyatt & Blake, L.L.P. has extensive experience in complex civil litigation matters.

Based on Class Counsel's experience and the specific facts and circumstances of this particular case, Class Counsel have concluded that the Settlement is fair, reasonable, and adequate. This factor supports final approval of the proposed Settlement. In *MicroStrategy*, the court concluded that in similar circumstances, it was "'appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole.'" 148 F. Supp. 2d at 665 (quoting *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)); *see also Flinn*, 528 F.2d at 1173 ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement.").

Based on consideration of all four of the "fairness" factors identified by the Fourth Circuit, Class Counsel recommend final approval of the Settlement.

## C. The Proposed Settlement Meets the Adequacy Standard.

In determining the "adequacy" of a proposed settlement, the district court should consider: (a) the relative strength of the merits of plaintiffs' case and the

existence of strong defenses or difficulties of proof the plaintiffs will have to face at trial; (b) the expected duration and cost of additional litigation; (c) the defendants' solvency and the likelihood of plaintiffs' recovery on a judgment; and (d) the degree of class members' opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

### 1. The Relative Strength of the Plaintiffs' Case on the Merits and the Existence of Strong Defenses or Difficulties of Proof

"Perhaps the most important factor in evaluating the adequacy of a class action settlement is the relative strengths of plaintiffs' case and the existence of any defenses or difficulties of proof." *Horton*, 855 F. Supp. at 831; *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 244-45 (S.D.W. Va. 2005). The court in *MicroStrategy*, however, commented that "while plaintiffs' counsel express confidence in the strength of plaintiffs' case on the merits, 'the complexities and uncertainties characteristic of class action securities litigation, and the associated expenses of such litigation, make it appropriate for … plaintiffs to compromise their claims pursuant to a reasonable settlement.'" 148 F. Supp. 2d at 665 (quoting *S.C. Nat'l Bank*, 139 F.R.D. at 340).

As evidenced by the vigor with which they have prosecuted it and the amount of time and money they have expended on a contingent basis toward that end, Class Counsel are optimistic about their ultimate success in this matter. But there is risk in any litigation, and especially here, where the district court dismissed

the Action, and the area of the law — ERISA class actions — is one of the most complex, unpredictable, and rapidly developing in all of American jurisprudence. As a result, any prediction of success is far from reliable. *Compare, e.g.*, *Veera v. Ambac Plan Admin. Order Comm.*, No. 10-4191, 2011 WL 43534 (S.D.N.Y. Jan. 6, 2011), *with In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009).

In this case, Defendants have forcefully (and successfully) defended their actions with respect to the Plans, and have shown no hesitancy to litigate this matter fully through the appeal and trial, should Plaintiffs' appeal be successful. Moreover, Defendants are represented by highly experienced and competent counsel. In view of these potential obstacles to recovery against these Defendants, the Settlement totaling $12.35 million should be regarded as a highly favorable recovery.

## 2. The Anticipated Duration and Expense of Additional Litigation

ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources. It is not unreasonable to assume that Defendants would continue their vigorous defense of this case through the appeal and up through trial, should the appeal be successful. The Settlement obviates that delay and will,

if approved, advance the recovery to the Plans, possibly by as much as two years.

Thus, this factor also speaks strongly in favor of final approval of the proposed

Settlement. *Cf. MicroStrategy*, 148 F. Supp. 2d at 667 ("[T]here is little doubt that

a jury verdict for either side would only have ushered in a new round of litigation

in the Fourth Circuit and beyond, thus extending the duration of the case and

significantly delaying any relief for plaintiffs.").

### 3. The Solvency of Defendants

In this case, Wachovia was acquired by Wells Fargo, which is not insolvent.

There appears to be insurance coverage for the claims asserted in this case. If this

case were to continue, however, Plaintiffs might face the risk of future insolvency

or developments that call insurance coverage into question.

### 4. The Degree of Opposition to the Settlement

Class members received the best notice practicable under the circumstances,

and only three class members have objected to the Settlement. *See* Loeser Decl.

¶¶ 54-60.[6]  The small percentage of objections thus far reflects Class members'

support for the Settlement and is compelling evidence that the Settlement is

---

[6] The objection from Jorge H. Miyares, Jr. (Dkt. No. 159), suggests that Mr. Miyares objects to the Settlement Agreement, and/or an award of attorneys' fees and costs, on the grounds that Defendants did nothing wrong; The objection from Harvey E. Baker (Dkt. No. 160), suggests that Mr. Baker objects to the Settlement Agreement on the grounds that the Settlement amount is not significant enough; Lastly, the objection from Lorraine Zbuchalski (Dkt. No. 161), only states that Ms. Zbuchalski does not wish to be included in the Settlement.

adequate.[7]

In addition to the support of the Class, the proposed Settlement is being reviewed by an independent fiduciary retained by Defendants for the express purpose of evaluating the Settlement's fairness and adequacy to the Plans and the Class members who are participants or beneficiaries of the Plans. The Independent Fiduciary report is to be filed by August 15, 2011. The independent fiduciary offers an objective and highly sophisticated perspective concerning the fairness and adequacy of the proposed Settlement. Non-opposition by the independent fiduciary would be strong evidence in favor of the Settlement's adequacy.

**D.     The Plan of Allocation is Fair and Reasonable and Should be Approved.**

The same standards govern the assessment of a plan for distribution of settlement proceeds that govern the review of the settlement as a whole – the plan must be fair, reasonable and adequate. *MicroStrategy*, 148 F. Supp. 2d. at 668 (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Oracle Sec. Litig.*, No. 90-0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 399

---

[7] Under provisions of the Preliminary Approval Order and Notice, objections must be postmarked no later than July 25, 2011, and filed with the Court and served upon the counsel listed in the Notice by no later than August 18, 2011. Class Counsel will respond to additional objections, if any, that are filed and served before these deadlines on or before August 22, 2011.

(D.D.C. 2002).

Under the proposed Plan of Allocation, the Net Settlement Amount will be distributed among the Settlement Class members in accordance with their alleged losses.  *See* Loeser Decl., Ex. C (Plan of Allocation).  Each Settlement Class member's Net Loss will be the total of the member's units of Wachovia common stock Net Loss, which will be, for each Settlement Class member the result obtained by: (i) taking the dollar amount of the Settlement Class member's Plan account invested in units of Wachovia common stock at the beginning of the Class Period; (ii) adding the dollar amount added to the Settlement Class member's Plan account invested in units of Wachovia Common Stock during the Class Period; (iii) subtracting the dollar amount credited to the Settlement Class member's Plan account resulting from any and all dispositions (*e.g.*, sales, withdrawals, loans, etc.) of units of Wachovia common stock during the Class Period; and (iv) subtracting the dollar amount of the Settlement Class member's Plan account balance in units of Wachovia common stock on December 31, 2008.

The Net Losses of the Settlement Class members will be added. Each Settlement Class member will be assigned a Net Loss Percentage, reflecting the percentage of the Settlement Class member's loss in relation to the losses incurred by all Settlement Class members. Each Settlement Class member's share of the Class Settlement Amount will be equal to the Class Settlement Amount multiplied

by the Settlement Class member's Net Loss Percentage. This calculation will be called for each Settlement Class member the "Preliminary Dollar Recovery."

Defendants will identify all Settlement Class members whose Preliminary Dollar Recovery is less than $25. These Settlement Class members will not receive money from the Class Settlement Amount, and the recovery otherwise allocable to them will be reallocated among the other Settlement Class members. For Settlement Class members who had an account in both the Wachovia Savings Plan and the A.G. Edwards, Inc. Retirement and Profit Sharing Plan, during the Class Period, a "Preliminary Dollar Recovery" will be calculated for each Plan, and the Preliminary Dollar Recovery in each Plan shall not be combined for purposes of determining whether the $25 threshold has been met.

Each Settlement Class member may preserve the tax status of the retirement funds at issue. Settlement Class members who are current Plan participants will receive their distributions in their Plan accounts. For former members of the WSP, the Allocation Administrator shall invest Former Members' Final Dollar Recovery in the Wells Fargo & Co. Stable Value Fund unless, at the time the allocation is made, a money market fund is available for investment in the Wells Fargo & Company 401(k) Plan, in which case the Allocation Administrator shall invest such Former Member's Final Dollar Recovery in the money market fund. For former members of the AGE Plan, the Allocation Administrator shall invest the

Former Members' Final Dollar Recovery in the Vanguard PRIME Money Market

Fund unless the AGE Plan has merged into the Wells Fargo & Company 401(k)

Plan by such date, in which case, the Allocation Administrator shall invest such

Former Member's Final Dollar Recovery in the same manner as described above

for Settlement Class members in the WSP. The deposited amount, plus interest,

shall then be distributed to each Former Member as a qualified distribution from

the Plan pursuant to ERISA and the Internal Revenue Code.

Accordingly, the Plan of Allocation is fair, reasonable and adequate, and

should be approved. *See MicroStrategy*, 148 F. Supp. 2d. at 669 ("the plan fairly

and rationally allocates the settlement consideration among class members"); *Smith

v. Krispy Kreme Doughnut Corp.*, No. 05-187 (M.D.N.C. Jan. 10, 2007) (Order

Approving Plan of Allocation) (approving a similar plan of allocation); *Global

Crossing,* 225 F.R.D. at 462 (same).

**E.      This Court Should Certify the Settlement Class.**

This Court has preliminarily certified the Settlement Class, and Plaintiffs

now request final certification of the Settlement Class. The Settlement Class is

defined as:

> All persons other than Defendants who were participants in or
> beneficiaries of the Wachovia Savings Plan at any time between May
> 8, 2006 and December 31, 2008 and whose Plan account included
> units of investment in Wachovia Corporation common stock and/or
> participants in or beneficiaries of the A.G. Edwards, Inc. Retirement
> and Profit Sharing Plan at any time between October 1, 2007 and

December 31, 2008 and whose Plan account included units of investment in Wachovia Corporation common stock.

Plaintiffs have already addressed the class certification issues, *see* Dkt. No. 153 at 17-23, as has the Court in its Preliminary Approval Order at 5-6. Accordingly, Plaintiffs will not repeat that discussion here. Final certification is appropriate to allow the Settlement Class members to partake of the benefits of the Settlement, and should be granted.

### 1. *Wal-Mart v. Dukes* does not undermine the Settlement.

The recent Supreme Court decision, *Wal-Mart Stores, Inc. v. Dukes*, --- S.Ct. ----, 2011 WL 2437013 (2011), does not impact the Settlement. In *Dukes*, the Court reversed the opinion of the Ninth Circuit certifying a Title VII sex discrimination class under 23(b)(2). The Court first addressed that plaintiffs failed to establish commonality under 23(a)(2) when they failed to allege a common contention, for example "discriminatory bias on the part of the same supervisor", capable of classwide resolution. *Id*. at *7. The Court further held that claims for monetary relief can only be certified under Federal Rule of Civil Procedure 23(b)(2) when the monetary relief is incidental to the injunctive or declaratory relief, *id*. at *12, which the Court found not to be the case.

Here, the Parties stipulated to certification of this case as a class action for settlement purposes pursuant to 23(b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure. *See* Settlement Agreement ¶ 3.2.2(b); Loeser Decl. ¶ A. In light of the

*Dukes* decision, and in order to simplify the analysis, Plaintiffs suggest that the final order approve certification under Rule 23(b)(1) only.[8] This will not impact the settlement as Rule 23(b)(2) is an unnecessary alternative basis for certification. Indeed, numerous courts have certified similar ERISA company stock cases solely under Rule 23(b)(1). *See, e.g.*, *Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009).

As explained in Plaintiffs' Preliminary Approval Memorandum, because of the derivative nature of Plaintiffs' plan-wide claims under ERISA §§ 502(a)(2) and 409, numerous courts have held that such claims are easily certified under both Rule 23(b)(1)(A) and b(1)(B). *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases holding same). With regards to 23(b)(1)(B) which looks at possible prejudice to the class members, absent class certification there is a strong possibility that more than one court would have to adjudicate issues common to all class members. Each of the potential proceedings

_____

[8] Under Rule 23(b)(1), a class may be certified if:
(1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

would likely present the same common issues of law and fact, primarily whether Defendants breached their fiduciary duties to the Plan. As the court in *Yost v. First Horizon Nat'l Corp* recently explained, "class certification [under 23(b)(1)(B)], therefore, protects Plaintiffs and the class members from the risk of inconsistent rulings that might well be dispositive of their claims." *See Yost v. First Horizon Nat'l Corp*., No. 08-2293, 2011 WL 2182262, at *13 (W.D. Tenn. June 3, 2011) (certifying similar ERISA company stock case under Rule 23(b)(1)(B)).

Turning to 23(b)(1)(A) which concerns possible prejudice to defendants, since the claims here are brought on behalf of the Plans for Plan-wide losses due to investments in Company Stock, any judgment necessarily binds the fiduciary in his dealings with the plan, rather than merely in his dealings with individual participants. Hence, two conflicting judgments that arise out of the same breaches of duty to the Plan concerning investment in Company Stock would establish incompatible standards of conduct for the fiduciaries. *Id*. at *14 (certifying similar ERISA company stock case under Rule 23(b)(1)(A)).

Moreover, the concerns expressed in *Dukes* are not present here because of the plan-wide recovery awarded here. After the Plans receive the settlement funds, the recovery will be distributed to the Settlement Class Members pursuant to the Plan of Allocation—which will ensure that each Settlement Class member's *pro rata* share of the Net Settlement Fund corresponds to their losses as a percentage of

the total losses suffered by Settlement Class members' investments in Company Stock during the Class Period described above. Thus, unlike in *Dukes*, which concerned recovery for back-pay for 1.5 million plaintiffs located in 3,400 different stores with a "kaleidoscope of supervisors", there is no need for the company/Defendant or the Court to perform individual determinations of each class member's eligibility for recovery.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and issue an Order granting Plaintiffs' Motion for Final Approval of ERISA Class Action Settlement, for Settlement Class Certification, and for Approval of Plan of Allocation.

Respectfully submitted this 12th day of July, 2011.

> **KELLER ROHRBACK L.L.P.**
> /s/ Derek W. Loeser
> Lynn Lincoln Sarko (LS-3700)
> lsarko@kellerrohrback.com
> Derek W. Loeser (DL-6712)
> dloeser@kellerrohrback.com
> Erin M. Riley (ER-7673)
> eriley@kellerrohrback.com
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101-3052
> Telephone: (206) 623-1900
> Facsimile: (206) 623-3384
>
> *Class Class Counsel for the Settlement Class and Counsel for Plaintiffs Hardman, Dziak, and Kelley*

Wyatt & Blake, L.L.P.
James Wyatt
jwyatt@wyattlaw.net
Robert A. Blake, Jr.
rblake@wyattlaw.net
435 E. Morehead Street
Charlotte, NC  28202-2609
Telephone: (704) 331-0767
Facsimile:  (704) 331-0773

***Local Counsel for the Settlement Class***

**Additional Plaintiffs' Counsel:**

Holzer Holzer & Fistel, LLC
Michael I. Fistel, Jr.
Corey D. Holzer
Marshall P. Dees
1117 Perimeter Center West, Suite E-107
Atlanta, GA  30338
Telephone:  (770) 392-0090
Facsimile:  (770) 392-0029

Dyer & Berens, LLP
Jeffrey A. Berens
682 Grant Street
Denver, CO  80203
Telephone:  (303) 861-1764
Facsimile:  (303) 395-0393

**Counsel for Plaintiff Wright**

SQUITIERI & FEARON, LLP
Stephen J. Fearon, Jr.
32 East 57th Street
New York, NY  10022
Telephone:  (212) 421-6492
Facsimile:  (212) 421-6553

**Counsel for Plaintiff Allen**

Nobel Izard LLP
Mark Kindall
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT  06103
Telephone:  (860) 493-6292
Facsimile:  (860) 493-6290

**Counsel for Plaintiff Cominsky**

Spector Roseman
Kodroff & Willis, P.C.
Robert M. Roseman
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

**Counsel for Plaintiff Hansen**

Liner Grode Stein Yankelevitz
Ronald S. Kravitz
199 Fremont Street, 20th Floor
San Francisco, CA 94105
Telephone: (415) 489-7700
Facsimile: (415) 489-7701

**Counsel for Plaintiff Tuttle**