# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:09cv262

| | |
|---|---|
| IN RE WACHOVIA CORPORATION ) | |
| ERISA LITIGATION ) | |
| ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ALL ACTIONS ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Class Counsel's Motion for Award of Attorneys' Fees and Expenses and Named Plaintiff Case Contribution Awards [Doc. 164].

## I. PROCEDURAL BACKGROUND

This Action[1] involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA"), with respect to the Wachovia Savings Plan and the A.G. Edwards, Inc. Retirement and Profit Sharing Plan (collectively, "the Plans"), which are defined contribution plans intended to satisfy the requirements of Section 401 of the Internal Revenue Code. Specifically, the Plaintiffs Todd A.

---

[1] All capitalized terms used in this Order and not defined herein shall have the meanings assigned to them in the Settlement Agreement. [Doc. 154-2, amended by Docs. 155, 172].

Wright, Alan A. Hardman, Richard F. Dziak, David W. Allen, Robert M. Cominsky, Rose Hansen, Denise A. Tuttle, and Jerry R. Kelley, Jr. ("the Named Plaintiffs"), on behalf of themselves and other participants and beneficiaries of the Plans, claimed that the Defendants breached their fiduciary duties to act solely in the interest of the participants and beneficiaries of the Plans, and to exercise the required skill, care, prudence, and diligence in administering the Plans and the Plans' assets.[2]

On October 12, 2009, the Defendants moved to dismiss the Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On August 6, 2010, the Court granted the Defendants' Motion and dismissed the Complaint. [Docs. 144, 145]. The Plaintiffs filed a timely Notice of Appeal. [Doc. 146].

While this matter was pending on appeal, the parties engaged in mediation and entered into a settlement agreement whereby the parties agreed to settle this matter for a cash payment of $12.35 million and additional consideration. On December 17, 2010, upon motion of the parties,

---

[2]This lawsuit originated as eight putative class actions filed in June 2008 against the Defendants in the District Court for the Southern District of New York. These actions were consolidated pursuant to an August 13, 2008 Order issued by the Honorable Naomi Reice Buchwald, United States District Judge. On June 18, 2009, Judge Buchwald transferred the consolidated action to this Court. [See Doc. 1]. Pursuant to this Court's September 3, 2009 Order, the Plaintiffs filed a Consolidated Complaint on September 18, 2009. [Consolidated Complaint ("Complaint"), Doc. 104].

2

the Fourth Circuit Court of Appeals remanded the action to this Court for the purpose of conducting settlement proceedings. [Doc. 149].

On February 11, 2011, the Plaintiffs filed a motion seeking preliminary approval of the parties' Class Action Settlement Agreement ("Settlement Agreement"). Following a hearing, the Court entered a Preliminary Approval Order which, among other things, preliminarily certified the Settlement Class; preliminarily appointed the Named Plaintiffs as Class Representatives for the Settlement Class; appointed Keller Rohrback, L.L.P. as Class Counsel and Wyatt & Blake, L.L.P., as Local Counsel for the Settlement Class; scheduled a fairness hearing for August 25, 2011; directed Class Counsel in the manner in which to provide notice to the members of the Settlement Class; and provided deadlines for the filing of further motions as well as objections to the Settlement Agreement. [Doc. 156].

On July 12, 2011, the Plaintiffs filed a motion for final approval of the Settlement, for class certification, and for approval of the Plan of Allocation [Doc. 163], along with the present motion for an award of attorneys' fees and expenses and for Case Contribution Awards for each of the Named Plaintiffs. [Doc. 164]. The Court conducted a fairness hearing on August 25, 2011, at which time the Court heard the arguments of counsel for the Plaintiffs and

3

Defendants, as well as arguments from both Objector John H. Loughridge, Jr. and his counsel.

By entry of an Order simultaneously herewith, the Court has certified the proposed Class, overruled the objections filed by Class Members, and approved the Class Action Settlement and Plan of Allocation. Remaining before the Court is Class Counsel's motion for an award of attorneys' fees, expenses, and case contribution awards. Specifically, Counsel seeks (i) an award of attorneys' fees in the amount of $2,470,000, which represents 20% of the common fund of $12.35 million established for the Class;[3] (ii) reimbursement of out-of-pocket litigation expenses of $94,769.55; and (iii) approval of Case Contribution Awards of $5,000 to each of the Named Plaintiffs.

For the reasons that follow, the Court will award Class Counsel attorneys' fees in the amount of $1,852,500.00, representing 15% of the Settlement fund. The Court further will reimburse Class Counsel fully for their litigation expenses and will award each Named Plaintiff a Case Contribution Award of $5,000.00.

---

[3]Class Counsel initially requested a 25% award but during the course of the fairness hearing agreed to reduce their request to 20%.

4

## II. ANALYSIS

### A. Attorneys' Fee Award

In calculating an award of attorneys' fees as part of a class action settlement, courts have the discretion to apply either the lodestar method or the percentage method. See McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). Under the lodestar method,

> the trial court must first determine the hours reasonably expended by counsel that created, protected, or preserved the fund. Then, the number of compensable hours is multiplied by a reasonable hourly rate for the attorneys' services to produce a lodestar figure. Finally, the lodestar figure may then be increased or decreased based on an assessment of a variety of factors relating to the nature of the cause, the market for such legal services, and the result achieved.

In re Microstrategy, Inc. Sec. Litig., 172 F.Supp.2d 778, 786 (E.D. Va. 2001) (footnotes omitted).

Under the percentage method, the fee is awarded as a percentage of the common fund. Jones v. Dominion Res. Servs., Inc., 601 F.Supp.2d 756, 758 (S.D.W.Va. 2009). Because it is not based on an attorney's hourly rate or the amount of billable hours, this method "is less cumbersome to apply than the lodestar computation, and it has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases, particularly those cases

5

with a high probability of success." Microstrategy, 172 F.Supp.2d at 787 (footnotes omitted). The majority of courts have endorsed the percentage method for calculating attorneys' fee awards in common fund cases. See Domonoske v. Bank of America, N.A., -- F.Supp.2d --, 2011 WL 2341100, at *6 (W.D. Va. 2011); Manual for Complex Litigation (Fourth) § 14.121 at 187. "One of the reasons that courts prefer the percentage method is that [it] better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." Jones, 601 F.Supp.2d at 759. The percentage method also gives courts "more flexibility to award attorneys for the efficient settlement of a case." Id. In light of these considerations, the Court shall apply the percentage method in determining the amount of attorneys' fees to be awarded in this case.

Even where the percentage method is used, however, the lodestar calculation may still be applied as a "cross-check" in the determination of a reasonable percentage. See Manual for Complex Litigation (Fourth) § 14.121 at 191. "By using the percentage of fund method and supplementing it with the lodestar cross-check, a court can take advantage of the benefits of both methods." Jones, 601 F.Supp.2d at 760; Microstrategy, 172 F.Supp.2d at 788

6

(noting that "both the lodestar and percentage methods are useful tools for trial courts to use to help calibrate a judgment in selecting a fair and reasonable fee").

In support of their fee request, Plaintiffs' counsel cites the factors adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), to evaluate attorneys' fees under the lodestar method.[4] The Fourth Circuit, however, has never explicitly approved the application of the Barber factors to a percentage calculation of a fee award, and as one district court has explained:

> [T]he Barber factors are not ideal when separated from the lodestar calculation. One of the main advantages of using a percentage of fund method is that it "ties the attorneys' award to the overall result achieved rather than the hours expended by the attorney." Third Circuit Task Force Report, Selection of Class Counsel, 208 F.R.D 340 (January 15, 2002). The result achieved should, therefore, be the most prominent factor considered in the analysis. Because of its placement within a great many Barber factors,

---

[4] Those factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to perform the legal services properly; (4) the attorneys' opportunity costs in pursuing the litigation; (5) the customary fee for similar work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations, if any, imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and abilities of the attorneys; (10) the undesirability of the case within the legal community; (11) the nature and length of the professional relationship between the attorneys and the client; and (12) fee awards in similar cases. Barber, 577 F.2d at 226 n.28 (citing Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

7

>  the importance of the result obtained may be diminished under that test. (The first factor listed in Barber is the "time and labor expended" by the attorneys, the primary factor which should be considered when conducting a lodestar analysis, but of lesser importance in the percentage of fund method.)

Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC, 623 F.Supp.2d 713, 717-18 (S.D. W.Va. 2009). Recognizing the limitations of applying the Barber factors to a percentage calculation, several courts within this circuit instead have applied the seven-factor test adopted by the Third Circuit in the case of In re Cendant Corp. PRIDES Litigation, 243 F.3d 722, 733 (3d Cir. 2001), to determine the amount of a reasonable percentage award. See, e.g., Domonoske, 2011 WL 2341100, at *6 n.11; In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 261 (E.D. Va. 2009); Kay Co. v. Equitable Prod. Co., 749 F.Supp.2d 455, 464 (S.D. W.Va. 2010); Loudermilk, 623 F.Supp.2d at 717-18; Jones, 601 F.Supp.2d at 760. The Cendant factors are as follows:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

8

The Mills Corp., 265 F.R.D. at 261. The Court finds these cases persuasive and therefore will follow them in applying the Cendant factors to the present case.[5]

### 1. Results Obtained for the Class

"The result achieved by the attorneys for the class is often cited as one of the most significant factors in determining the reasonableness of a fee award." Jones, 601 F.Supp.2d at 761; see also Teague v. Bakker, 213 F.Supp.2d 571, 583 (W.D.N.C. 2002) ("In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'") (citation omitted). In the present case, the Plaintiffs' Complaint had been dismissed at the pleading stage and the case was pending on appeal when the Settlement was reached. As Plaintiffs' Counsel candidly admit, the Plaintiffs faced a significant risk of losing on appeal, especially in light of the numerous decisions dismissing similar cases at the pleading stage.[6] [See Doc. 64-1 at 16]. Counsel further acknowledge that even if

---

[5] Even utilizing the Barber factors, however, the Court's determination of an appropriate fee award would be the same.

[6] In fact, the district court case upon which the Court extensively relied in dismissing the Plaintiffs' Complaint, In re Citigroup ERISA Litigation, No. 07 Civ. 9790, 2009 WL 2762708, at *7-8 (S.D.N.Y. Aug. 31, 2009), was just recently affirmed by the Second Circuit. See In re Citigroup ERISA Litig., -- F.3d --, 2011 WL 4950368 (2d Cir. Oct. 19, 2011). These cases were originally filed in the Southern District of New York. Thus, in the forum initially chosen by the Plaintiffs, the theory on which the Plaintiffs

9

Plaintiffs had succeeded on appeal, they would have faced significant hurdles in continuing the litigation. [See id. (noting the complexity, expense and likely duration of ERISA cases)]. In light of these circumstances, the Court finds that the $12.35 million Settlement reached is significant and represents a fair result for the Class.

### 2. Objections by Class Members

Of the approximately 150,000 Class Members, only four filed formal objections to the proposed Settlement. The relatively few number of objections demonstrates the satisfaction of Class Members with the settlement result, as well as their implicit approval of its terms, including the requested fee award, and supports the reasonableness of the requested fee. See Jones, 601 F.Supp.2d at 763.

### 3. Quality, Skill, and Efficiency of Attorneys Involved

The Plaintiffs are represented by highly experienced and competent counsel. Class Counsel has extensive experience in handling ERISA class action cases and other complex litigation. Additionally, Local Counsel has extensive experience in complex civil litigation matters.

---

proceeded is without merit.

## 4. Complexity and Duration of the Litigation

The procedural history of this case is relatively straightforward. The action was litigated for approximately two and a half years before the parties reached a settlement agreement; however, the litigation never progressed past the pleadings stage. Because the Plaintiffs' Complaint was dismissed on a Rule 12 motion, no formal discovery was conducted.[7] Plaintiffs had appealed the dismissal and filed an appellate brief when the parties agreed to mediate the case. The parties' settlement negotiations, while undoubtedly hard-fought, resulted in a comprehensive settlement agreement after only one day of mediation. While the procedural history of this case is not complex, the Court notes that substantively this case posed many challenges for Counsel. ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources.

---

[7] The Defendants did produce certain initial documents to the Plaintiffs that enabled Class Counsel to determine key issues regarding the nature of the Plans and the liabilities of various Defendant fiduciaries. [See Final Order Approving Class Settlement, Finding 6].

### 5. Risk of Nonpayment

In this case, Wachovia was acquired by Wells Fargo, which is not insolvent. Based upon the representations of Plaintiffs' Counsel, there further appears to be insurance coverage for the claims asserted in this case. If the case were to continue, however, Plaintiffs might face the risk of future insolvency or of developments that could call insurance coverage into question.

### 6. Public Policy Considerations

There are two primary public policy considerations at stake in considering an attorneys' fee award in the context of a class action settlement. One is the need to diminish the "perception among a significant part of the non-lawyer population and even among lawyers and judges that the risk premium is too high in class action cases and that class action plaintiffs' lawyers are overcompensated for the work that they do." Third Circuit Task Force Report, Selection of Class Counsel, 208 F.R.D. 340, 343-44 (Jan. 15, 2002). This perception is reflected in the objection filed by Jorge H. Miyares, Jr., the sole class member who specifically objected to the award of attorneys' fees in this case. In his objection, Mr. Miyares states, in pertinent part, as follows:

12

> Reading about this entire suit makes my stomach queasy -- it seems like one more example of lawyers finding a way to wedge themselves into a troubled situation and make themselves a buck. Plaintiff's lawyers, in my opinion, have approached a deep pocketed corporation and, as if they were mobsters, said "Nice little 401(k) you got there . . . it would be a shame if something happened to it."
>
> So, while I would accept the settlement as-is IF it is the only way for the defendants to get out of this mess, what I would love to see, if it were legally possible, would be for the court to order the settlement such that the provision for plaintiff's counsel's legal fees and expenses were capped at 1% of the total settlement amount, versus the current 25% . . . .
>
> . . . I hate to see plaintiff's counsel rewarded with up to three million dollars (25% of the settlement amount) that might otherwise have benefitted retirees in this plan, or the profitability of Wachovia, which would have benefitted its shareholders.

[Doc. 159 at 1-2]. As the Court in <u>Jones</u> noted, "[s]uch perceptions are not only harmful to the legal profession, but undermine the integrity of the entire legal system." 601 F.Supp.2d at 764. To diminish such perceptions, in reviewing Class Counsel's fee request, the Court "must exercise heightened vigilance to ensure the fees are in fact reasonable beyond reproach and worthy of our justice system." <u>Id.</u> at 765.

13

The other important public policy that the Court must consider, however, is the need "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class . . . ." Microstrategy, 172 F.Supp.2d at 788. Both of these competing interests must be taken into account in calculating a reasonable fee award.

After careful consideration of these important public policies, the Court finds and concludes that an attorneys' fee equal to 15% of the Settlement fund constitutes a reasonable award in this case. The Court finds that such an award is "high enough that these particular attorneys, skilled as they are, are not put in a financial situation where they will be unable or unwilling to pursue similar types of class action litigation in the future" but is not "so high . . . as to overcompensate plaintiffs' counsel at the expense of the class, or to create a perception of such overcompensation." Loudermilk, 623 F.Supp.2d at 724-25.

### 7. Awards in Similar Cases

The Court finds that an award of a 15% percentage fee is well within the range of awards made in similar complex class action cases. See, e.g., In re AOL Time Warner ERISA Litig., No. 02 Cv. 8853 (SWK), 2007 WL 3145111, at *1 (S.D.N.Y. Oct. 26, 2007) (awarding fee averaging 17.9% of common

14

fund); In re Royal Ahold N.V. Sec. & ERISA Litig., 461 F.Supp.2d 383, 387 (D. Md. 2006) (awarding fees representing 12% of settlement fund); In re Lucent Techs., Inc., Sec. Litig., 327 F.Supp.2d 426, 450 (D.N.J. 2004) (awarding ERISA class counsel 15% fee award); In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (awarding fee representing approximately 15% of settlement fund); In re WorldCom, Inc. ERISA Litig., 02 Cv. 4816 (DLC), 2004 WL 2338151, at *11 (S.D.N.Y. Oct. 18, 2004) (reserving 20% of settlement fund for potential distribution to counsel).

### 8. Lodestar Cross-Check

The fairness and reasonableness of a 15% percentage fee is confirmed by a "cross-check" against the lodestar. Plaintiffs' Counsel has submitted a lodestar figure of $1,706,182.25, representing approximately 3,778 hours of work by various attorneys and professionals claiming the hourly rates typically sought in their particular jurisdictions, plus an additional $100,000 for work that Counsel estimate will be required for future administration of the Settlement. The hourly rates claimed, however, are far in excess of the rates typically charged for similar work in this particular district and are therefore unreasonable. See, e.g., Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC, 747 F.Supp.2d 568, 595 (W.D.N.C. 2010) (discussing

15

customary rates in the Western District of North Carolina). For example, many of the attorneys claim hourly rates in excess of $400 per hour, with some charging as much as $700 or $800 per hour for their services. Many of the professionals, meanwhile, claim hourly rates in excess of $200 per hour. Such fees, while perhaps customary in the jurisdictions where these attorneys and professionals are located, are not in keeping with the standard and customary rates charged for similar work in the Western District of North Carolina. Accordingly, the Court will endeavor to calculate the lodestar figure utilizing the rates of $400 per hour for partners, $225 for associates, and $75 for paralegals, as these rates are more "commensurate with the market rates prevailing in the Charlotte community 'for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995)).[8]

Calculating the lodestar using the customary rates charged in this district results in a figure of $955,510.00, reflecting a reduction of approximately 40% in the lodestar amount from that calculated by Counsel. Including a similarly-reduced amount of $60,000 for estimated future fees

---

[8]This lodestar calculation is at best only a rough estimate, as not all of the billing summaries provided by Counsel indicate whether the persons claiming fees are partners, associates or paralegals. The Court has attempted to glean such distinctions from the difference in billing rates charged.

16

results in a total lodestar figure of $1,015,510.00. A 15% fee award constitutes a multiplier of approximately 1.8 over this reduced total lodestar figure, a figure which Plaintiffs' Counsel concedes is "well within the range that has been accepted in the Fourth Circuit." [See Doc. 164-1 at 24].[9] See also Domonoske, 2011 WL 2341100, at *7 (noting that 1.8 multiplier "is well within the normal range of lodestar multipliers").

When granting an award of attorneys' fees from a class action common fund, the Court "must guard the rights of the class with zeal." Mba v. World Airways, Inc., 369 F. App'x 194, 199 (2d Cir. 2010). This task has proven to be particularly challenging in light of the non-adversarial nature of the present fee proceedings. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 52 (2d Cir. 2000) ("Defendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee."); see also McDaniel, 595 F.2d at 418 ("[P]laintiffs' and defendants' lawyers share an interest in the approval of an agreed upon settlement. As a result, the district judge loses the benefit of an adversarial process, which may inform and sharpen the judicial inquiry.") (citations, internal quotation marks, and other alterations omitted). Having considered the interests of the

---

[9]The 25% fee award that was originally requested constituted a multiplier of approximately 1.8 over the $1.7 million lodestar calculated by Counsel.

17

Class, and having carefully reviewed the relevant factors as set forth above, the Court is satisfied that a percentage award equal to 15% of the Settlement fund constitutes a fair and reasonable fee award in this case. Accordingly, Class Counsel is hereby awarded a total of $1,852,500.00 in attorneys' fees.

**B.    Award of Expenses**

Class Counsel also requests reimbursement of $94,769.55 in expenses. Costs reasonably incurred by counsel in prosecuting a class action "may appropriately be reimbursed from the common fund." Microstrategy, 172 F.Supp.2d at 791. "Costs should reflect a reasonable amount of expenditures for a case of its magnitude and also bear a reasonable relationship to the time and effort expended and the result achieved." Jones, 601 F.Supp.2d at 767 (citations and internal quotation marks omitted). The Court has conducted a careful review of the submissions of Plaintiffs' Counsel and finds that the expenses incurred appear to be reasonable in both nature and amount and bear a reasonable relationship to the time and effort expended as well as the result achieved in this matter. Accordingly, the Court will reimburse Plaintiffs' Counsel the full amount of their claimed expenses.

### C. Case Contribution Awards

Finally, Class Counsel requests Case Contribution Awards in the amount of $5,000 for each of the Named Plaintiffs. "Incentive awards are routinely approved in class actions to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." Jones, 601 F.Supp.2d at 767-68 (citation and internal quotation marks omitted). The Court finds that the requested awards are reasonable and adequately compensate the Named Plaintiffs for their participation in this case.

### O R D E R

**IT IS, THEREFORE, ORDERED** that Class Counsel's Motion for Award of Attorneys' Fees and Expenses [Doc. 164] is **GRANTED** to the extent that Class Counsel is hereby awarded attorneys' fees in the amount of $1,852,500.00, representing 15% of the Qualified Settlement Fund, and $94,769.55 in reimbursement of Class Counsel's reasonable expenses incurred in prosecuting the Action. The attorneys' fees and expenses so

awarded shall be paid from the Qualified Settlement Fund pursuant to the terms of the Settlement Agreement.

**IT IS FURTHER ORDERED** that Class Counsel's Motion for Award of Named Plaintiff Case Contribution Awards [Doc. 164] is **GRANTED**, and the Named Plaintiffs are each hereby awarded a Case Contribution Award in the amount of $5,000.00. The Case Contribution Awards shall be paid from the Qualified Settlement Fund and shall be in addition to any portion of the Qualified Settlement Fund the Named Plaintiffs would otherwise be entitled to receive as members of the Settlement Class.

**IT IS SO ORDERED.**

Signed: October 24, 2011

Martin Reidinger
United States District Judge